# THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY vs. SUSAN WESTERVELT AND OTHERS.

An indorsement of her name in blank by a wife upon a policy of insurance upon the life of her husband taken out for her benefit and payable to her or her assigns, with a delivery of the policy to the husband, to enable him to use it as collateral security in obtaining a loan, will be valid and binding in equity in favor of the party making the loan, and the wife will not be permitted to deny the power of the husband to fill up the assignment.

Where the husband, without the authority or knowledge of the wife, filled out the assignment of the policy not merely as security for the proposed loan, but also as security to a creditor for a pre-existing debt, it was held that the wife was not bound by the latter assignment.

The assignment of such a policy by a wife is valid in this state.

By the laws of New York where the husband and wife resided such an assignment was invalid. The policy was issued by an insurance company of this state and the assignment was made in the state of New Jersey, where such assignments were valid. Held that the laws of New York could not operate in the case.

BILL OF INTERPLEADER ; in the Superior Court in Hartford County, September Term, 1879.

*H. C. Robinson*, for the plaintiffs.

*S. Fessenden*, for Susan A. Westervelt.

*G. G. Sill*, for assigns of Susan A. Westervelt.

HOVEY, J. The Connecticut Mutual Life Insurance Company, by a policy of insurance signed in their behalf by their president and secretary at Hartford in this state, on the 13th day of March, 1860, and countersigned by their agent at New York on the 15th day of the same month, assured the life of Samuel P. Westervelt, then of Morrisiana in the state of New York, for the sole use of his wife, the said Susan Westervelt, in the sum of five thousand dollars, for the whole term of his life, in consideration of the sum of two hundred and fourteen dollars then paid by the said Susan Westervelt and of an annual premium to be paid on or before the 13th day of March in every year while the policy continued. By the terms of the policy the sum insured was made payable to the said Susan Westervelt, her executors, administrators or assigns, for her sole use, within ninety days after due notice and proof of the death of the said Samuel P. Westervelt, after deducting therefrom all notes taken for premiums unpaid at that date. And in case of the death of the said Susan before that of. said Samuel, the insurance was made payable to her children or their guardians, if under age, for their use, upon like proofs. The policy was delivered to the assured in the city of New York by the agent of the said company in that city on or about the 15th day of March, 1860. The annual premiums were paid by the said Samuel P. Westervelt until and including the one due on the 13th of March, 1876, and those which were payable on the 13th of March in the years 1877 and 1878 were paid by the said Ralph P. Westervelt.

In the month of June, 1875, the said Samuel P. Wester-

velt requested the said Susan Westervelt to indorse the said policy of insurance in blank and deliver the same to him, in order that he might use it as collateral security for the payment of a check drawn by the said Ralph P. Westervelt and delivered to him, the said Samuel, and upon which he, the said Samuel, desired to obtain the money at the Fifth National Bank of the city of New York. The said Susan thereupon indorsed her name upon the policy and delivered the policy to the said Samuel P. Westervelt so indorsed. Soon afterwards, that is to say, on or about the 15th day of June, 1875, the said Samuel P. Westervelt purchased, in the name of the said Susan, a farm in Westchester County in the state of New York and took a deed thereof in her name. The consideration stipulated by him to be paid therefor was twelve thousand dollars.

In the latter part of the year 1875, the said Samuel P. Westervelt was indebted to the said Mary H. Westervelt and Anna M. Fenner for money lent in the sum of fourteen hundred dollars; and one thousand dollars, parcel of the consideration stipulated to be paid for said sum, being about to fall due and become payable, he, the said Samuel, applied to the said Mary H. Westervelt and Anna M. Fenner to raise him the sum of three thousand dollars on the security of a second mortgage on certain property in Harlem, New York; but this they refused to do, as the security offered was not satisfactory to them. A few days afterwards he again applied to them through the said Ralph P. Westervelt, to raise him the said sum, offering as security therefor the note of the said Susan Westervelt and an assignment of the said policy of insurance; and they agreed with him that they would raise the money. They accordingly borrowed of the Mutual Life Insurance Company of New York the said sum of three thousand dollars, and mortgaged their real estate in Patterson, New Jersey, where they resided, to secure its payment; and on the 22d day of January, 1876, at said Patterson, they loaned the said sum to the said Samuel P. Westervelt and received from him at the same place the note of the said Susan of that date for the amount

thereof, payable one year after date at the residence of the said Susan in New York city. They also received from the said Samuel, at the same time and place, the said policy of insurance assigned to them and the said Ralph P. Westervelt, in the form set forth in their answer to the present petition. That note was afterwards lost or accidentally destroyed, and the said Susan Westervelt gave a new note of the same tenor, amount, and date, in the place thereof. The said Susan also ratified the assignment of said policy, so far as it purported to be an assignment to the said Mary H. Westervelt and Anna M. Fenner. But she never authorized the assignment of any portion of the said policy or of the sum insured thereby to the said Ralph P. Westervelt, and never ratified the assignment made to him on said policy.

The said Samuel P. Westervelt paid from the money loaned him by the said Mary H. Westervelt and Anna M. Fenner to the said Ralph P. Westervelt $700, to the said Mary and Anna $700, in part payment of a debt of $1,400 which he owed them, $100 for the expenses incurred by the insurance company in searching the title to the lands mortgaged to them as aforesaid by the said Mary H. Westervelt and Anna M. Fenner, and the remaining $1,500 he retained himself.

The assignment to Ralph P. Westervelt was made without any lawful authority whatever, and, as appears by his answer, not to secure the payment of a loan made at the time to the said Samuel P. Westervelt, but to secure a pre-existing debt.

The said Mary H. Westervelt and Anna M. Fenner had no knowledge of the circumstances under which the policy was delivered to the said Samuel P. Westervelt by the said Susan Westervelt, but supposed and believed, and were justified in supposing and believing, that it was delivered to him for the purpose of enabling him to borrow of them the said sum of three thousand dollars, and to secure the payment thereof by the assignment written upon said policy. The said policy was not obtained by the said Samuel

P. Westervelt, from the said Susan Westervelt by duress or force as alleged by the said Susan in her answer; nor was the said Susan compelled to sign her name on the back of said policy by the violence of her husband, as in said answer is alleged. But if these allegations were true they could not be allowed to affect the rights of the said Mary H. Westervelt and Anna M. Fenner, first, because, at the time they received the assignment of the policy, they had no notice or knowledge of them, and secondly, because the assignment was ratified and confirmed by the said Susan Westervelt. This perhaps sufficiently disposes of another claim made by the said Susan Westervelt upon the hearing, and that is, that she only signed her name on the back of the policy when there was no writing which purported to be an assignment or any writing of any kind upon it, and therefore that the assignment should not be treated as her act. But as the claim was made it may be as well perhaps to decide it. The question raised by this claim has never, to my knowledge, been before the courts of this state, but it came before the Supreme Court of Illinois in the case of *Norwood* v. *Guerdon*, 60 Ill., 253, and it was there held, and I think correctly, that where a person insured his life for the benefit of his wife, and she indorsed her name on the policy in blank, and the husband procured a loan of money and pledged the policy as collateral security for its payment, the wife should not be permitted to deny the power of the husband to fill up the assignment; and that such an assignment was valid and binding in equity. LAWRENCE, C. J., in giving the opinion of the court says: " It is however urged that the wife of Norwood never consented to the assignment of the original policy to Guerdon, or at least there is no proof of such consent; but she placed her name upon the back of the policy as she herself admits, at the request of her husband, and left the policy in his possession. Armed with this evidence of his right to pledge the instrument, he goes upon the money market and does pledge it, first to one person and then to another, and by such pledge raises money and pays his debts. It is not

in evidence, and we cannot presume, that the wife ever had any interest in this policy from having contributed from her separate estate toward the payment of the premiums * * * But whatever her interest, by indorsing the policy in blank and delivering it to her husband, she clothed him with all the necessary evidence of a power to pledge the instrument by filling up her blank assignment, and we should be opening the door to the grossest frauds if we were to permit the wife, after having done all this, to come forward and claim that her husband had no right to assign the instrument. * * * The husband and the wife are the only parties interested, and they have both participated in the assignment. The law provides no particular mode by which the wife is to manifest her consent, as in the case of a conveyance of lands, and if such an assignment as was made in the present case is not valid, then a policy payable to a married woman is not assignable at all. It is not however and cannot be claimed that a policy payable to a married woman is incapable of assignment within the purview of a court of equity, but it is only claimed that in this case the wife did not consent. She gave, however, to the public the evidence of her consent by indorsing the policy in blank—an act which could be interpreted as done for no other purpose than an assignment, and the same consequences must be attached to this act against her as would follow from such an act performed by any other person. When innocent parties have advanced money to her husband on the faith of such blank indorsements, she cannot be permitted to repudiate the transaction. She cannot be permitted to enable her husband to perpetrate a fraud."

The indorsement of the policy in blank by the said Susan Westervelt in the case at bar could, therefore, have been interpreted by the public as made for no other purpose than an assignment, and if upon the faith of it the said Mary H. Westervelt and Anna M. Fenner had made the loan which they did to Samuel P. Westervelt, Susan Westervelt would not be permitted to say that such was not the true interpretation of the indorsement. But the blank was filled when the

policy was delivered to the said Mary H. Westervelt and Anna M. Fenner; and they supposed, as they had a right to, that the whole was completed and the signature of the assignor affixed at one and the same time. The assignor cannot therefore be allowed to repudiate the transaction on the ground that she indorsed the policy only in blank and that the formal assignment was written by her husband afterwards.

But it is urged that the assignment was void, because by the laws of New York the policy was not assignable; and the cases of *Eadie* v. *Slemmon*, 26 N. Y., 9; *Barry* v. *Equitable Life Insurance Company*, 59 N. Y., 587, and *Wilson* v. *Lawrence*, 13 Hun, (22 N. Y. Sup. Court Rep.,) 463, are cited in support of the claim. Two of those cases arose upon policies issued by New York corporations, and the third upon a policy issued by the Connecticut Mutual Life Insurance Company, the petitioner in the case at bar. In two of the cases the assignor and assignee resided and were domiciled in the state of New York and the assignments were executed and delivered in that state. In the other cases the assignor was a resident of the state of New York, and the assignee was a resident and citizen of the state of Maryland. The assignment was executed on a paper separate from the policy and transmitted to the assignee in Maryland by mail from New York, without the policy. The policy was subsequently delivered to the assignee in the city of New York. The court held that the government of the United States was the agent of the assignee in transmitting the assignment to him from New York to Maryland, and therefore that the assignment, as well as the policy, was delivered to the assignee in the city of New York; and that the contract of assignment was upon that ground to be treated as a New York contract. The policy in the present case is the contract of a Connecticut corporation, and by the terms of it the sum insured is payable in Hartford to Susan Westervelt the wife of Samuel P. Westervelt, her executors, administrators or assigns, unless she died before her husband, and to her children in case he survived her.

The assignment was commenced in New York, but was completed and, with the policy, was delivered in the state of New Jersey, to citizens of that state. The law of New Jersey where the assignment was then completed and delivered or the law of Connecticut where the contract of insurance is to be performed, must determine the validity of the assignment. There can be no doubt, I think, that the assignment is valid by the laws of Connecticut, as it was made by the wife with the consent and co-operation of her husband, and there is as little doubt that it is valid by the laws of New Jersey. "Every state may by its own laws bind its citizens wherever they may be with all the obligations which its own tribunals can enforce. If laws are made which attempt to go further than that, they must needs be inoperative, as they cannot be enforced beyond the jurisdiction of the home tribunals, except with the consent and by the action of the foreign state." While, therefore, the state of New York had the right to declare that a wife who was a citizen of that state should not assign a policy of insurance upon the life of her husband for her sole benefit, if issued under the laws of New York ; and while it had the power to enforce that declaration against its own citizens and others seeking to obtain the benefit of such an assignment in its own tribunals, yet where a citizen of New York, holding such a policy issued by a Connecticut corporation, goes into New Jersey or any other state where the policy is assignable, and obtains a loan of money and assigns his policy as security for the payment of that loan, and then comes into the courts of Connecticut to enforce such payment and his rights under the assignment, the laws of New York will furnish no answer to his demands. The laws of New Jersey where the assignment was completed and delivered, or the laws of Connecticut where the contract is to be performed, must govern. As the laws of the two states coincide it is unnecessary to determine whether those of the former or of the latter state would govern, in case there was a conflict between them.

The conclusion is that a decree be entered authorizing

the petitioners to retain from the fund due upon the policy the amount of clerk and court fees, and that they pay from the balance of said fund—1. To Ralph P. Westervelt, one of the respondents, the sum of two hundred sixty-eight dollars and thirty-eight cents, being the amount paid by him for premiums on the said policy for the years 1877 and 1878 and the interest thereon. 2. To the respondents Mary H. Westervelt and Anna M. Fenner, the sum of three thousand dollars. 3. To the respondent Susan Westervelt the remainder.