LOUISVILLE PUBLIC WAREHOUSE CO. *v.* COLLECTOR OF CUSTOMS.

(*Circuit Court of Appeals, Sixth Circuit.* January 16, 1892.)

1. CIRCUIT COURT OF APPEALS—JURISDICTION—REVENUE APPEALS.
    The fifth section of the act creating the circuit court of appeals enumerates the cases in which appeals shall still be taken direct to the supreme court, and the sixth section declares that the circuit court of appeals shall have appellate jurisdiction of all other cases, "unless otherwise provided by law." *Held*, that this gives the latter court jurisdiction of an appeal from a judgment rendered by the circuit court in reviewing a decision of the board of general appraisers under the revenue act of June 10, 1890.

2. SAME.
    The fact that section 15 of the latter act authorizes the circuit court, when it deems the question of special importance, to allow an appeal to the supreme court, cannot be considered as having "otherwise provided by law," as such a construction would extend the direct appellate jurisdiction of the supreme court beyond the classes of cases specifically enumerated in section 5 of the act creating the circuit court of appeals, and would in fact deprive the latter court of all appellate jurisdiction; for prior to that act there was "provision by" law in respect to appeals or writs of error in all cases.

3. CUSTOM DUTIES—REIMPORTED WHISKY—WITHDRAWAL FROM BOND.
    The tariff act of October 1, 1890, (26 U. S. St. p. 624,) provides in section 22 that on the reimportation of an article manufactured in the United States, and once exported without paying an internal revenue tax, it shall pay a duty equal to the internal revenue tax on such article. Section 50 declares that any merchandise deposited on bond before the date of the act may be withdrawn for consumption on payment of the duties in force before the act; when such duties are based upon the weight of the goods, the weight shall be taken at the time of the withdrawal. *Held*, that while, under the internal revenue laws, the proof of spirits is determined by weight, yet the tax is always assessed upon the gallon measurement, whether the spirits are above or below proof, and hence reimported whisky, when withdrawn from bond, must pay according to the number of gallons at the time of importation, and not at time of withdrawal.

On Appeal from the United States Circuit Court for the District of Kentucky.

Application by the Louisville Public Warehouse Company for a review of the decision of the bond of general apppraisers, affirming the action of the surveyor of customs in exacting certain duties on bonded whiskies. A demurrer to the application was sustained, (48 Fed. Rep. 372,) and the court allowed an appeal. Affirmed.

*Augustus E. Willson,* (*Willson & Thum,* of counsel,) for appellant.

*Geo. W. Jolly,* U. S. Dist. Atty., for appellee.

Before JACKSON, Circuit Judge, and SAGE and SWAN, District Judges.

JACKSON, Circuit Judge. The question of law presented by the record in this case is whether the duty on reimported whisky, once exported, of the product or manufacture of the United States, should be levied and collected on the quantity thereof imported and entered into a customs warehouse under bond, or upon the quantity actually withdrawn from such warehouse. The material facts of the case on which this question arises are the following: Five barrels of whisky, having the serial numbers 1168, 1169, 1170, 1171, and 1172, and manufactured in the United States, were exported to a foreign country before any internal revenue tax had been assessed and paid thereon. This whisky was reimported into the United States on January 6, 1890. The importers executed a warehousing bond, as required by law, and the spirits were entered into the customs bonded warehouse at Louisville, Ky., in January, 1890. The 5 barrels, as gauged by the customs gauger at or about the time of such entry in the warehouse, were found to contain 162 taxable gallons. The appellant, as the importer and consignee thereof, withdrew said 5 barrels of whisky from the bonded warehouse on November 28, 1890, and was required to pay the tax on 162 gallons, the original quantity entered into warehouse, at 90 cents per gallon, amounting to $145.80. The actual quantity in the 5 barrels at the time of the withdrawal was 155 gallons, 7 gallons having evaporated or been lost while in the customs warehouse. The appellant, as the importer, insisted that it was not liable to any tax or duty except on the 155 gallons shown by the regauge to be in the 5 barrels at the date of their withdrawal. The surveyor of the port at Louisville, acting as the collector of customs, decided that appellant should pay duty on the 162 taxable gallons originally entered into the warehouse, and that it was not entitled to any deduction or allowance on account of the loss of the seven gallons between the date of entry and withdrawal of the whisky. The appellant paid the tax or duty of 90 cents per gallon on said 7 gallons of lost spirits under protest, claiming that the exaction was unauthorized and illegal, because the provisions of the Revised Statutes of the United States required the tax to be assessed by the weight of the goods, and by the fiftieth section of the act approved October 1, 1890, known as the "McKinley Bill," it was provided that, when duty is based upon the weight of merchandise deposited in any public or private warehouse, said duty shall be levied and collected upon the weight of said

merchandise at the time of its withdrawal, and thereupon appealed from the decision of the surveyor or collector to the board of United States general appraisers at New York. The protest and papers relating to the matter were transmitted to said board of general appraisers, who, after consideration of the question presented, on March 9, 1891, affirmed the action of the surveyor of customs, the same being in accordance with a decision of said board rendered February 4, 1891, No. 300 G. A. Thereafter on April 4, 1891, the appellant filed in the circuit court for the district of Kentucky an application for a review by said court of the questions of law and fact involved in the decision of said board of United States general appraisers, who, in pursuance of the order of the court, returned to said circuit court the record and evidence of the proceedings taken and had before it in the premises, with a certified statement of the facts involved in the case, and their decision thereon. This proceeding by appellant for a review of the decision of said board of general appraisers was had and taken under the act of June 10, 1890, entitled "An act to simplify the law in relation to the collection of the revenue," (26 St. at Large, p. 131,) the fourteenth and fifteenth sections of which provide, in substance, that, if an importer is dissatisfied with the decision of the collector as to the rate and amount of duty chargeable upon imported merchandise, he may, within a certain time, upon the payment of such duty, give notice in writing to the collector of his objection thereto. Upon such notice and payment the collector shall transmit the invoice and all papers and exhibits connected therewith to the board of three general appraisers at New York, which shall examine and decide the case thus submitted; and, if the importer is dissatisfied with the decision of said board, he may, within 30 days next after such decision, apply to the circuit court of the United States within the district in which the matter arises for a review of the questions of law and fact involved in such decision. The application for such review is required to set forth a concise statement of the errors of law and fact complained of; and upon the filing thereof with the clerk the court is required to order the board of general appraisers to make a return to said court of the record and evidence taken by them, with a certified statement of the facts involved in the case, and their decision thereon; and said return, together with such further evidence as may be introduced by either side to the controversy, "shall constitute the record upon which said circuit court shall give priority to, and proceed to hear and determine, the questions of law and fact involved in such decision, respecting the classification of such merchandise, and the rate of duty imposed thereon under such classification, and the decision of such court shall be final; and the proper collector, or person acting as such, shall liquidate the entry accordingly, unless such court shall be of opinion that the question involved is of such importance as to require a review of such decision by the supreme court of the United States, in which case said circuit court, or the judge making the decision, may within thirty days thereafter allow an appeal to said supreme court."

After said board of general appraisers had, in obedience to its order, made this return to the circuit court as provided by the said act, which,

together with the application, constituted the record upon which said court was to hear and determine the questions of law and fact involved, neither side having offered or desired to introduce any further evidence, the United States attorney for the district of Kentucky appeared on behalf of the United States, and moved to dismiss the proceedings, and also demurred thereto, because upon the facts appearing in the record the appellant or applicant was entitled to no relief. The motion to dismiss was overruled, and the demurrer was sustained. The applicant declined to plead further, and it was thereupon ordered and adjudged by the court that said application be and the same was dismissed with costs; and the court being of the opinion that the question involved was of such importance as to require a review of its decision by the United States circuit court of appeals for the sixth circuit, or by the supreme court of the United States, sustained the applicant's motion therefor, and allowed it an appeal to this court. The opinion of BARR, J., sustaining the demurrer and dismissing the application, is reported in 48 Fed. Rep. 372.

The appellee or attorney for the United States has moved to dismiss said appeal because this court has no jurisdiction to entertain the same. In support of this motion, it is insisted that under the foregoing provisions of the fifteenth section of the act of June 10, 1890, the lower court could only allow the appeal to the supreme court of the United States. Said section did not confer any absolute right of appeal on the part of the applicant for review from the decision of the circuit court; but said court, or the judge making the decision, was authorized and empowered "to allow an appeal to said supreme court" in case the court or judge should be of opinion that the question involved was of such importance as to require a review of the decision by the supreme court of the United States. When said act of June 10, 1890, was passed, and went into operation, appeals could be taken and allowed from decisions of the circuit courts to the supreme court alone. No other court had or possessed appellate jurisdiction in respect to such decisions. By the act approved March 3, 1891, the circuit court of appeals was established and invested with appellate jurisdiction to review by appeal or by writ of error final decisions in the district and circuit courts, in all cases other than those provided for in the fifth section of said act, "unless otherwise provided by law." By the fifth section of said act the cases are defined and enumerated in which appeals and writs of error may be taken from the district and circuit courts direct to the supreme court. It is not claimed that the present is one of the cases therein enumerated, which have to be taken for review to the supreme court; but it is claimed that it does not come within the provisions of the sixth section of said act, because, while not embraced in the fifth section, it is "otherwise provided by law" that the appeal shall be allowed, if at all, to the supreme court,— in other words, that the appeal to the supreme court under the fifteenth section of the act of June 10, 1890, is excepted from the jurisdiction of this court under the sixth section of the act of March 3, 1891, by force of the words, "unless otherwise provided by law." This construction of the two acts would lead to the result of practically depriving this

court of all appellate jurisdiction, because when the act of March 3, 1891, was passed, all appeals and writs of error were "otherwise provided by law." In adopting the new system of appellate courts the clearly-expressed intention of congress was to divide appeals and writs of error into two general classes, one of which should be taken direct to the supreme court, while all others should lie to this court. The enumeration of the former is specific, while the latter is general; and the words, "unless otherwise provided by law," should not be interpreted so as to extend the direct appellate jurisdiction of the supreme court beyond the class of cases enumerated in section 5 of said act creating this court. That the appeal provided for under the fifteenth section of the act of June 10, 1890, has to be specially allowed by the court or judge making the decision, in no way affects the question. When allowed, the appeal stands upon the same footing and in the same position as an appeal in any other case, and must be taken to that appellate tribunal which is given jurisdiction over the subject-matter involved by the act of March 3, 1891. Looking, then, to the nature of the case, to the avowed purpose of the act creating this court, and the appellate jurisdiction therein conferred, we are of the opinion that the motion to dismiss the appeal is not well taken, and should be overruled.

Upon the merits of the case the appellant has assigned the following errors as grounds for reversal of the judgment below; in that the court erred in sustaining the demurrer; in approving and affirming the decision of the collector and board of general appraisers in holding that the customs duty imposed by law upon such whisky is not "based upon the weight of merchandise;" in deciding that the duty upon the whisky should be collected upon the quantity thereof at the time it was entered into bond, and not upon the actual quantity at the time of withdrawal for consumption; and in dismissing the application for review of the decision of the customs officers. These assignments of error involve only the one general question, whether, under the law, the appellant was properly chargeable with the 90 cents per gallon tax on the 7 gallons of the whisky lost between the date of entry into bonded warehouse and the withdrawal of the 5 packages or barrels. While the amount immediately involved is small, it appears that the present is a test case upon the question, which involves large amounts. The general proposition contended for by appellant is that the duty to be levied, collected, and paid upon the reimported whisky in question is to be ascertained by the quantity of taxable gallons thereof at the time of withdrawal, and not at the time of entry into bonded warehouse. By the tariff acts of March 3, 1883, and October 1, 1890, it is provided—

"That upon reimported articles, once exported, of the growth, product, or manufacture of the United States, upon which no internal tax has been assessed or paid, * * * there shall be levied, collected, and paid a duty equal to the tax imposed by the internal revenue laws upon such articles."

The duty on the five barrels of whisky reimported by appellant is thus made "equal" to that imposed by the internal revenue laws; and it is claimed by appellant in support of its position that as, by the provisions

of the internal revenue laws, "tax gallons" of distilled spirits are based upon "proof gallons," which are "based upon the weight" of the merchandise, the taxable quantity of whisky must be determined by the "weight" of such whisky at the time of its withdrawal, under the fiftieth section of the act of October 1, 1890, which provides—

"That on and after the day when this act shall go into effect, (October 6, 1890,) all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to no other duty upon the entry or withdrawal thereof than if the same were imported respectively after that day: provided, that any imported merchandise deposited in bond in any public or private bonded warehouse, having been so deposited prior to the 1st day of October, 1890, may be withdrawn for consumption at any time prior to February 1, 1891, upon the payment of duties at the rate in force prior to the passage of this act: provided, further, that, when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its withdrawal."

The five barrels of whisky in this case were reimported while the act of March 3, 1883, was in force, and were deposited in bond in the customs warehouse prior to October 1, 1890, and being withdrawn prior to February 1, 1891, were subject to the rate of duty prescribed, not by the act of October 1, 1890, but by the act of March 3, 1883, under the first of the above provisions. It is therefore a question by no means free from doubt whether the second proviso of said section, which may have reference to importations under the act of October 1, 1890, has any application to the present case. But, conceding that it does, the question is presented whether the duty imposed on reimported whisky, either under the tariff act of 1883 or 1890, is based upon the "weight" thereof, within the true import or meaning of said second proviso. Both of said acts contained in almost every schedule thereof numerous articles in respect to which the duty was based upon the weight of such articles, according to the avoirdupois standard, such as pounds, tons, etc. The terms of said provision, "when duties are based upon the weight of merchandise," may therefore find ample subjects of application if taken in their usual and ordinary sense, or if the word "weight" is given in its primary and ordinary meaning, such as the quantity of heaviness, the quality of being heavy, or the degree and extent of downward pressure under the influence of gravity, or the quantity of matter as estimated by the balance or scale.

Counsel for appellant, however, argues with much ingenuity that the words "weight of merchandise," as employed in said proviso, embrace and include all quantity measure depending upon the specific gravity of the matter, article, or thing measured; that, under the internal revenue law, there is a difference between "proof gallon" measure and "gallon" measure, in this: that the latter is a measure by quantity of volume or bulk, while the former is a measure of quantity, not by

bulk or volume, but by specific gravity, which depends for its ascertainment upon weight of the whisky, so as to bring it within the provisions of said proviso.    It is not insisted that the duty on reimported whisky is based only on weight, but that the taxable gallon is based upon the "proof gallon," which is to be ascertained by specific gravity, —that is, "weight,"—and consequently brings such imported merchandise within the terms and meaning of said proviso.    This proposition is too refined and involves a construction of the fiftieth section of the act of October 1, 1890, and of the internal revenue laws, too strained and technical, to be sustained.    It is provided by section 3249, Rev. St., that "proof spirits shall be held to be that alcoholic liquor which contains one-half its volume of alcohol, of a specific gravity of seventy-nine hundred and thirty-nine ten thousandths, (.7939,) at (60°) sixty degrees Fahrenheit;" and in order to ascertain the "proof" of liquors or distilled spirits, or the quantity subject to tax, the use of hydrometers are authorized by sections 2918 and 3249, Rev. St.    The hydrometer, as its derivation imports, is a water or volume measure employed to determine the specific gravities of liquids, and hence the strength of spirituous liquors.    By section 3251, Rev. St., as amended by the act of March 3, 1875, the rate of internal revenue tax on distilled spirits produced in the United States is 90 cents on each and every proof gallon, or wine gallon when below proof.    This tax is to be collected on the whole number of gauge or wine gallons when below proof, and is to be increased "in proportion for any greater strength than the strength of proof spirits" as defined by section 3249.    Said tax is to attach to such spirits as soon as the same "is in existence as such."    Section 3248, Rev. St.    It thus appears that when the distilled spirits are only proof, as defined by section 3249, Rev. St., or less than proof, the tax is to be levied and collected on the wine gallon, by the express terms of section 3251, Rev. St.    If the spirits are above proof, as defined by section 3249, Rev. St., then such excess of strength is, by the provisions of the law, to be ascertained, and the tax thereon is to be increased in proportion for any greater strength then " proof " strength.    To ascertain whether spirits have a greater strength than "proof," as defined, the hydrometer is ordinarily employed; but by section 3249, Rev. St., and by sections 329 and 330 of the act of October 1, 1890, the secretary of the treasury is authorized, in his discretion, to employ other means of arriving at the strength of imported liquors, such as distillation or otherwise.    It admits of no question that the tax on distilled spirits, when only proof or below proof, is based upon the volume as measured and determined by the wine gallon.    It is equally clear that, when the spirits are above proof, the tax is to be increased "in proportion for any greater strength than the strength of proof spirits."    The mode of ascertaining such excessive strength, and of estimating the taxable gallons thus found to exist, in no way affects the standard of measurement.    Under appellant's theory, if reimported whisky is above proof, the duty is based upon and to be ascertained by the "weight" thereof, but, when it is at or below proof, it is dutiable according to

wine gallon or volume measurement. In the latter case the tax would be on the quantity imported and entered into bond; in the former, on the quantity on hand at the time of withdrawal. We cannot yield our assent to this theory. It was certainly not the intention of the law to prescribe one rule for taxing spirits at or below proof, and another for taxing such spirits when above proof; and the argument that because the strength of spirituous liquors is ascertained, under the law and regulations of the treasury department, by means of an instrument to determine the specific gravities of liquors, such ascertainment involves the "weight" thereof, in the sense of the last proviso to section 50 of the act of October 1, 1890, cannot be maintained. "Proof," as defined by Webster, means the act of testing the strength of alcoholic spirits; also, the degree of strength, as high proof, first proof, second, third, and fourth proofs. In the internal revenue law, it is used in the sense of degree of strength. It is said by Webster that formerly a very crude mode of ascertaining the strength of spirits was practiced, called "proof." The spirits were poured on gunpowder and inflamed. If at the end of the combustion the gunpowder took fire, the spirits were said to be above proof. In ascertaining the strength of distilled spirits, as compared with a standard fixed and defined by statute, whether the mode of ascertainment be by use of a water measure, called the "hydrometer," or by distillation, or the former crude gunpowder test, it cannot be properly said that such strength is determined by the weight of such spirits. Specific gravity is defined to be the ratio of the weight of a body to the weight of an equal volume of some other body, taken as the standard or unit. This standard is usually water for liquids and solids, and air for gases. The specific gravity standard is fixed by section 3249, Rev. St., for "proof" spirits, and the volume measure, as the basis of the tax thereon, is also defined. When the spirits are above "proof," this excess in strength, on which to base the increased tax, may be ascertained by a comparison of specific gravities with the standard so fixed, or by other means; but this does not involve the idea or proposition that the tax is based upon the specific gravity or weight, rather than the strength of the spirits. Strength, when above proof, regulates and forms the basis of the tax according to volume measurement. The mode of ascertaining such strength, as by the specific gravity, falls far short of showing or establishing that the tax or duty is based upon the weight of merchandise, within the true import and meaning of the second proviso to section 50 of the act of October 1, 1890.

It is urged that under the authority of *Brown* v. *Maryland,* 12 Wheat. 447, defining the time when the power of the state to tax imported goods attached, the court should so interpret the customs laws as to make the duty attach at the time of withdrawing the goods for consumption, rather than the date of entry into bonded warehouse. The tariff legislation of congress has not been heretofore so construed by the supreme court of the United States. On the contrary, the general rule has been recognized and enforced that the assessment of duties on im-

ported goods is properly made upon the quantity actually imported and entered at the custom-house. The tariff acts of 1846, 1851, and 1864 all received this construction; and the importers were not allowed for leakage even while detained for appraisement. See *U. S.* v. *Southmayd,* 9 How. 637; *Lawrence* v. *Caswell,* 13 How. 488; and *Belcher* v. *Linn,* 24 How. 508. The fiftieth section of the act of October 1, 1890, by the last proviso thereof, makes an exception to this general and well-settled rule of making the duty chargeable upon the quantity actually brought into the country, by declaring that, "when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its withdrawal." The appellant's case, as already stated, does not come within this exception, and the whisky imported by it was dutiable, under the general rule, upon the quantity actually imported and entered into bond. The tariff acts of 1883 and 1890 make no provision for any allowance for leakage or evaporation while imported spirits are in a bonded warehouse, like that found in the seventeenth section of the act of May 28, 1880, (21 St. at Large, p. 149.) Allowances for such losses by leakage or evaporation rest upon the express provisions of the statutes; and when not provided for therein the courts can make none, however strong the equity may be. This is the rule laid down recently by the supreme court of the United States in the case of *Thompson* v. *U. S.,* 12 Sup. Ct. Rep. 299, (decided at the present term, and not yet officially reported.) Upon the whole case, we are clearly of the opinion that the decision of the lower court was correct, and accordingly affirm the judgment below, with costs.