Porto Rico Distilling Company, Plaintiff and Appellant, v. Treasurer of Porto Rico, Defendant and Appellee.

Appeal from the District Court of Arecibo in an Action for the Refund of Taxes Paid Under Protest.

No. 1670.—Decided June 29, 1918.

Internal Revenue—Tax on Alcohol—Bonded Warehouse.—All spiritous liquors manufactured in or imported into Porto Rico, of which, exclusive of water, distilled spirits form the chief component, shall be subject to the payment of the tax imposed by law. The tax shall be paid before the alcohol is removed from the distillery except when taken to a general bonded warehouse established according to law.

ID.—DEFINITION OF DISTILLED SPIRITS OR ALCOHOLIC SPIRITS—DILUTED ALCOHOL—
RUM.—In defining the meaning of the words "distilled spirits" and "alco-
holic spirits" the Legislature included in the substance known as ethyl alco-
hol, hydrated oxide of ethyl, or spirit of wine, any dilution thereof.   There-
fore, pure alcohol to which water is added, or diluted alcohol, which is con-
verted into rum at the end of a certain period of time is distilled or alco-
holic spirits, subject, as an independent article, to the payment of the tax
prescribed by the statute.

ID.—EXEMPTION FROM TAXATION—LOST ALCOHOL.—As the statute expressly enu-
merates the cases of exemption from the payment of the tax on alcohol which
is lost or intended for certain uses and the case at bar is not included therein—
that is, the case of diluted alcohol or rum placed in wooden receptacles and
stored in a general bonded warehouse—it cannot be held that the quantity
lost is exempt from the payment of the tax.

The facts are stated in the opinion.

Mr. Félix Santoni for the appellant.

Messrs. Howard L. Kern, Attorney General, and E. T.
Fiddler, Assistant Attorney General, for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action for the refund of certain excise taxes
paid under protest. The plaintiff, Porto Rico Distilling
Company, is a corporation organized and existing under the
laws of Porto Rico, engaged in the manufacture, purchase
and sale of alcohol and the industrial and commercial trans-
actions incidental thereto. It owns a distillery called "Mi-
ramar" and also a general bonded warehouse in the city of
Arecibo. The warehouse is used for the storage and manu-
facture of articles subject to taxation, for export. From
March 16 to March 28, 1914, plaintiff transferred 16,000 liters
of alcohol from its distillery to its warehouse. In the
warehouse and in the presence of the internal-revenue
agent 13,158 litres of water were added to the alcohol, thus
making a total of 29,158 liters of alcohol of lower grade,
which shrank to 29,155 liters when placed in the receptacles.
Of that lower-grade alcohol 539 liters were removed on Jan-
uary 18, 1915, for shipment to the Canary Islands, Spain; 1,841
liters on October 8, 1915, for shipment to the Danish Island of
St. Thomas; 182 liters on February 24, 1916, for sale in Porto
Rico upon payment of a tax of fifty cents a liter; 9,793 liters

on June 12, 1916, for shipment to Havre, France, and 13,014 litres on June 13, 1916, also for Havre, France, making in all 25,369 liters. The difference between the quantity removed and that stored, 3,786 liters, was due to evaporation, leakage, or loss in the warehouse. The diluted alcohol was stored in wooden barrels, some of which were found by the internal-revenue agents who inspected the last shipment to be in bad condition. The Treasurer of Porto Rico demanded payment of the tax on the 3,786 liters lost and the plaintiff paid it under protest on July 6, 1916, and on August 1, 1916, brought this action for the refund of the amount which it considered had been unlawfully and unjustly collected.

When in 1914 the plaintiff transferred the 16,000 liters of alcohol from its distillery to its warehouse it gave a bond for the sum of $12,500, agreeing therein that it would pay the internal revenue on all of the distilled spirits not exported within two years from the date on which the same was placed in the warehouse. The said two years expired in March, 1916, but the plaintiff was granted an extension of time by the Treasurer for export shipment without payment of taxes, and furnished a new bond for the same amount. Among the conditions stipulated in the undertaking were the following:

" * * * and shall also pay, promptly, on demand of the Treasurer of Porto Rico, the corresponding taxes, at the rate of fifty cents per liter, or at such other rate as may be due by law, upon all distilled spirits, whether in the form of spirits or beverages or otherwise, that may be lost in said general bonded warehouse from any cause whatever, and shall also pay, promptly on demand of the Treasurer of Porto Rico, the corresponding taxes, at the rate of fifty cents per liter, or all such other rates as may be due by law, upon all distilled spirits, whether in the form of spirits or beverages or otherwise, that is not exported from Porto Rico, on or before June 30, 1916, there being included within the terms of this bond the 26,592 liters of rum stored in said general bonded warehouse No. 4 upon the date of the execution of this bond, * * *."

Such are the facts shown by the pleadings and the evidence, and basing its judgment thereon, the district court dismissed the complaint on February 21, 1917, with costs against the plaintiff, who thereupon took the present appeal.

*First.*—The appellant alleges that the district court erred in holding that the alcohol lost in the warehouse was subject to taxation.

Act No. 112 of 1913 provides that there shall be levied, collected and paid on all distilled spirits produced in Porto Rico, or imported or brought into Porto Rico, a tax of fifty cents on each liter or fraction thereof. For the purposes of the said act, all spirituous liquors, except as otherwise provided for in the said act, produced in Porto Rico, or brought or imported into Porto Rico, of which, exclusive of water, distilled spirits form the chief component, shall be regarded as distilled spirits. When the distilled spirits contained in any such spirituous liquor do not form the chief component thereof, exclusive of water, the tax shall be paid at the rate of twenty-eight cents per liter, or fraction thereof, on the amount by volume of any distilled spirits which such spirituous liquors may contain and on which no tax has been paid under any of the provisions of the said act. For the purposes of the said act, "chief component" shall be held to be that substance which determines the general use of the article.

It is also provided by law (sec. 3026, Comp. of 1911) that distilled spirits and alcoholic spirits, within the true meaning and intent of the act, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilution of said substance.

Hence it must be concluded that the alcohol under consideration in this case was subject to the payment of the tax of fifty cents imposed by the statute on each liter or fraction of a liter.

When should the said excise tax be paid? The law pro-
vides (sec. 3028, Comp. of 1911) that the tax shall attach to
alcoholic spirits as soon as separated, either in a pure or im-
pure condition, by distillation or other process of evaporation,
from any fermented or other substance; but payment thereof
shall be made before such spirits are removed from the
factory, except as otherwise provided in the act.

The general rule, then, is that the tax must be paid before
the spirits are removed from the factory. But this rule has
exceptions. The same act (sec. 3047, Comp. of 1911) author-
izes the Treasurer of Porto Rico to allow the establishment
of general bonded warehouses upon the furnishing of such
bond as he may prescribe. Said warehouses shall be used
exclusively for storing articles subject to taxation or for the
manufacture of such articles when they are intended for ex-
portation.

That was the case here. The plaintiff had a distillery
and was authorized also to establish a general bonded ware-
house. According to the general rule, the plaintiff should
have paid during the month of May, 1914, the excise tax on
the 16,000 liters of alcohol which it manufactured before re-
moving the same from its distillery; but, as it transferred
the alcohol from its distillery to its general bonded warehouse,
it was only required to furnish a bond to secure the payment
of the tax in case the said alcohol was not exported from the
Island within the period of two years, which time was later
extended a few months upon the furnishing of a new bond.

The alcohol was always subject to the tax and the tax
was secured by the bond as long as the alcohol was not ex-
ported, and the internal-revenue agents kept a detailed ac-
count thereof and inspected all shipments.

The last lot was shipped on June 13, 1916, or more than
two years after the alcohol had been deposited, and it was
then discovered that a certain quantity had leaked, evap-
orated, or otherwise been lost.

Should the plaintiff pay the tax on the lost quantity or is he exempt from such payment?

The Legislature prescribed (sec. 3028, Comp. of 1911) that in case the loss be caused by *vis major*, the alcohol so lost shall be wholly exempt from taxation. It further prescribed that alcohol intended for use as fuel, or other industrial purposes, and alcohol intended for use by charitable institutions, shall also be exempt from the payment of taxes, and that the Treasurer may permit the destruction of alcohol that may issue from a still in a condition unfit for consumption, and may exempt such spirits from the payment of the tax, and may also, in his discretion, abate the amount of the internal-revenue taxes accruing on spirits lost from any metal tank under the control of the Government before such taxes have been paid thereon, if it shall appear upon the production to him of satisfactory proof that said loss is due to natural causes beyond the control of the distiller.

*Expressio unius est exclusio alterius.* The case of the plaintiff is not included in any of these exemptions and therefore it should be considered as excluded. Moreover, the terms of the bond furnished to secure the payment of the tax show that the plaintiff knew that such was the law.

The question is not new. It has been decided repeatedly by the courts. In the case of *Louisville Public Warehouse Co.* v. *Collector of Customs*, 49 Fed. 561, 569, the Circuit Court of Appeals, Sixth Circuit, through Mr. Justice Jackson, expressed itself as follows:

"The tariff acts of 1883 and 1890 make no provision for any allowance for leakage or evaporation while imported spirits are in a bonded warehouse, like that found in the seventeenth section of the act of May 28, 1880 (21 St. at Large, p. 149). Allowances for such losses by leakage or evaporation rest upon the express provisions of the statutes; and when not provided for therein the courts can make none, however strong the equity may be."

And in the case of *Farrell* v. *United States*, 99 U. S. 221,

224, the Supreme Court of the United States, by Mr. Justice Strong, said:

"The bond was dated on the 13th of June, 1870. It bound the obligors in a penal sum, conditioned to pay the taxes on the spirits deposited in the warehouse before their removal, and within one year from the date thereof. The obligation was unconditional, and it was exactly that which the distiller and his sureties were by the act of Congress required to assume. Act of July 20, 1868, sec. 23; 16 Stat. 135, 136. Depositing distilled spirits in a government warehouse did not make them the property of the Government, or cause them to be held at the risk of the bailee. The property remained in the distiller, and the risk of loss by fire or any other casualty was consequently his. He and his sureties undertook to pay the Government tax upon the spirits in the warehouse within one year, with no exception for any possible contingency. The judgment of the Circuit Court was, therefore, correct. The case of the distiller may be a hard one; but his misfortune is not the fault of the Government."

*Second.*—The appellant further contends that even if it should be held that the tax should be paid on the shortage, this should be computed after deducting the water added to the alcohol—that is, that the appellant is not required to pay the tax on the 3,786 liters of diluted alcohol, but only on the 2,078 liters of pure alcohol contained therein; and in that case the sum of $854 which was illegally and unjustly collected from the appellant should be refunded.

We have already seen (sec. 3026, Comp. of 1911) that in defining the meaning of the terms "distilled spirits" and "alcoholic spirits" the Legislature included in the substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, any dilution of the said substance. Therefore, pure alcohol to which water is added, or diluted alcohol, is distilled or alcoholic spirits, and as an independent article is subject to the payment of the excise tax prescribed by the statute.

We have also seen that the general bonded warehouse was not used merely to store alcohol taken from the distillery, but also for the manufacture of articles intended for exportation.

When the alcohol was converted into another article, this and not the original alcohol was the substance on which the tax was imposed and the collection of which was suspended under the bond furnished for the purpose of allowing the owner to export the same from the Island within the time specified. The difference in quantity between the diluted alcohol stored and that exported must be considered as alcohol consumed in the Island and therefore the tax prescribed by law must be paid.

As a demonstration of the fact that the appellant understood that adding water to the alcohol constituted a new and distinct article subject to the payment of the excise tax, we will refer to the testimony of Juan Pizá, president of the plaintiff corporation, and of Lorenzo Oliver, its secretary, who admitted that alcohol to which water is added is converted after the lapse of a certain time, about two years, into rum; to the specific terms of the second security bond which included the rum deposited in the warehouse, and to the act of the plaintiff itself in voluntarily paying the tax of fifty cents a liter on the rum taken from its warehouse for use as samples.

The object of the plaintiff in removing the alcohol from its distillery to its warehouse was to convert it into rum by the addition of water and by the action of time. The act of adding water necessitated the presence of an internal-revenue agent. The operation was effected in his presence and the diluted alcohol was measured and stored as a distinct article to be exported within a fixed time, and if this were not done the tax prescribed by law was to be paid.

The appellant relies on the doctrine that ''the deposit is solely for the benefit of the distiller, and to enable him to give a bond for the tax instead of paying it at once.'' 22 Cyc. 1637. We agree with this, but not that it should apply only at the moment when the pure alcohol is removed from the distillery.

In this case there are two moments to be considered,

namely, when the pure alcohol was removed from the distillery and when the alcohol, after being diluted with water, was stored in barrels to be exported as rum after the lapse of a specified period. The benefit to the appellant consisted in that by virtue of its ownership of the warehouse and in consideration of the bond furnished it could make the conversion and employ more than two years in which to sell the alcohol in the form of rum, as a natural and logical result of which it would obtain better results.

For the reasons stated, and without need to consider and pass upon the other questions raised by the appellee in his brief, the judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justice Hutchison concurred.

Mr. Justice Wolf dissented.

Mr. Justice Aldrey took no part in the decision of this case.