Puerto Rico Distilling Co., Demandada y Apelante, *v.* Hill, Tesorero de Puerto Rico, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de Arecibo en pleito sobre devolución o reintegro de contribuciones pagadas bajo protesta.

No. 1670.—Resuelto en junio 29, 1918.

Arbitrios Sobre Alcoholes—Término Dentro del Cual Deberá Pagarse el Impuesto—Almacenes Generales de Depósito.—Todos los licores espirituosos fabricados o importados en Puerto Rico, en los cuales, con exclusión del agua, los principales componentes sean líquidos espirituosos destilados, están sujetos al pago de la contribución que especifica la ley. El impuesto deberá pagarse antes de salir el alcohol de la fábrica, excepción hecha del caso en que el alcohol se conduce a un almacén general de depósito establecido de acuerdo con la ley.

Verdadera Significación de las Palabras ''Espíritus Destilados, Espíritus Alcohólicos''—Agua Agregada al Alcohol—Ron.—El legislador, al fijar la verdadera significación de las palabras *espíritus destilados, espíritus alcohólicos,* incluyó en la sustancia conocida por *alcohol etílico, óxido hidratado de etilo o espíritu de vino,* cualquier dilución de la misma. En tal virtud el alcohol puro al cual se agrega agua, o sea el alcohol diluído, que se convierte en ron al cabo de cierto tiempo es un espíritu destilado o alcohólico, sujeto como artículo independiente al pago del arbitrio que exige el estatuto.

Exención del Pago del Impuesto—Alcohol Perdido.—Fijando la ley expresamente los casos en que se exime del pago del impuesto al alcohol que se pierda o se destine a ciertos usos, no estando comprendido el de autos, o sea el de alcohol diluído, ron, guardado en un depósito general en envases de madera, dentro de ellos, no cabe sostener que la parte del mismo que se perdió esté exenta del pago del impuesto.

Los hechos están expresados en la opinión.

Abogado de la apelante: Sr. *Félix Santoni.*

Abogados del apelado: *Sres. Howard L. Kern, Attorney General,* y *E. T. Fiddler, Assistant Attorney General.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

Se trata de un caso sobre devolución de cierto arbitrio pagado bajo protesta. La demandante, Porto Rico Distilling Company, es una corporación organizada y existente de acuerdo con las leyes de Puerto Rico, dedicada a la fabricación de alcohol, su compraventa, y las explotaciones industriales y comerciales que conciernen a ese producto. En la ciudad de Arecibo tiene establecida una destilería denominada "Miramar" y, además, un almacén general de depósito. El almacén se dedica a la guarda y fabricación de artículos sujetos a impuesto destinados a la exportación. Del 16 al 28 de marzo de 1914 la demandante trasladó desde su destilería a su almacén 16,000 litros de alcohol. En el almacén, con intervención del agente de rentas internas, se adicionó al alcohol 13,158 litros de agua, formándose así un total de 29,158 litros de alcohol rebajado de grado que se redujeron a 29,155 litros al ponerse en los receptáculos. De ese alcohol rebajado se extrajeron en enero 18, 1915, 539 litros para Canarias, España; en octubre 8, 1915, 1,841 litros para St. Thomas, Dinamarca; en febrero 24, 1916, 182 litros para la isla, previo pago del impuesto de cincuenta centavos por cada litro; en junio 12, 1916, 9,793 litros para el Havre, Francia, y en 13 de junio, 1916, 13,014 litros también para el Havre, Francia, o sea, en junto, 25,369 litros. La diferencia entre lo extraído y lo depositado, esto es, 3,786 litros se evaporó, mermó o perdió en el almacén. El alcohol rebajado se depositó en barriles de madera, algunos de los cuales se encontraron por los agentes de rentas internas al intervenir en el último despacho, en mal estado. El Tesorero de Puerto Rico requirió a la demandante al pago del impuesto sobre los 3,786 litros perdidos y la demandante así lo hizo, bajo protesta, el 6 de julio de 1916, estableciendo luego el 1º. de agosto de 1916,

este pleito en solicitud de que se le devuelva la suma que se le cobró a su juicio ilegal e injustamente.

Cuando en 1914 la demandante trasladó de su destilería a su depósito general los 16,000 litros de alcohol, prestó una fianza por la suma de $12,500, en la cual se hizo constar que las rentas internas se pagarían sobre todos los espíritus destilados que no fuesen exportados dentro de dos años contados a partir de la fecha de su depósito en el almacén. Dichos dos años expiraron en marzo de 1916, pero la demandante obtuvo que el plazo para la exportación sin pagar el impuesto le fuera prorrogado por el Tesorero, prestando al efecto una nueva fianza por la misma suma. Entre otras condiciones se hicieron constar en la fianza las que siguen:

" * * *  *  and shall also pay, promptly on demand of the Treasurer of Porto Rico, the corresponding taxes, at the rate of fifty cents per liter, or at such other rate as may be due by law, upon all distilled spirits, whether in the form of spirits or beverages, or otherwise, that may be lost in said general bonded warehouse from any cause whatsoever, and shall also pay, promptly on demand of the Treasurer of Porto Rico, the corresponding taxes, at the rate of fifty cents per liter, or all such other rates as may be due by law, upon all distilled spirits, whether in the form of spirits or beverages, or otherwise, that is not exported from Porto Rico, on or before June 30, 1916, there being included within the terms of this bond the 26,592 liters of rum stored in said general bonded warehouse No. 4, upon the date of the execution of this bond.  *  *  * "*

Tales son los hechos que resultan de las alegaciones y de las pruebas. Basándose en ellos la corte de distrito, el 21 de febrero de 1917, dictó sentencia declarando sin lugar la demanda, con las costas a cargo de la demandante. Esta interpuso entonces el presente recurso de apelación.

1. Alega la apelante que la corte de distrito erró al considerar sujeto a impuesto el alcohol perdido en el depósito.

De acuerdo con la ley (No. 112 de 1913), se impondrá cobrará y pagará sobre todo líquido espirituoso destilado, fabricado en Puerto Rico, o importado o introducido en la isla, un impuesto de cincuenta centavos por cada litro o frac-

ción de litro. Para los fines de dicha ley serán considerados como tales líquidos espirituosos destilados, salvo lo que en contrario disponga la misma, todos los licores espirituosos fabricados o introducidos en Puerto Rico, en los cuales, con exclusión del agua, los principales componentes sean líquidos espirituosos destilados. Cuando los espíritus destilados contenidos en dichos licores espirituosos, no constituyen, excluyendo el agua, los principales componentes, se pagará la contribución al tipo de veinte y ocho centavos por litro o fracción de litro sobre la cantidad en volumen de los licores espirituosos destilados que tales licores espirituosos contengan, y sobre los cuales no se haya pagado contribución con arreglo a alguna de las disposiciones de la ley. Para los fines de ésta se considerará como "principal componente" la sustancia que determine el uso general del artículo.

También de acuerdo con la ley (3026, Comp. 1911), los espíritus destilados, espíritus alcohólicos, dentro de la verdadera significación de la palabra, lo constituye la sustancia conocida por alcohol etílico, óxido hidratado de etilo, o espíritu de vino, que comunmente se produce por la fermentación de granos, almidón, melazas o azúcar, incluyendo todas las diluciones de dicha sustancia.

En tal virtud, es necesario concluir que el alcohol de que se trata en este caso, estaba sujeto al pago del impuesto de cincuenta centavos por litro o fracción de litro establecido por el estatuto.

¿Cuándo debía pagarse dicho arbitrio? Dispone la ley, (3028, Comp. 1911), que el impuesto pesará sobre los espíritus alcohólicos tan pronto como sean separados, en estado de pureza o impureza, mediante destilación u otro procedimiento de evaporación, de cualquier sustancia, ya sea fermentada o no, debiendo efectuarse el pago antes de que dichos espíritus alcohólicos salgan de la fábrica, salvo lo que en contrario disponga la ley.

La regla general es, pues, que debe pagarse el impuesto antes de salir el alcohol de la fábrica. Pero esa regla tiene

excepciones. La ley misma (3047, Comp. 1911), autoriza al Tesorero de Puerto Rico para permitir el establecimiento de almacenes generales de depósito, previa la prestación de la fianza que el Tesorero exija. Dichos almacenes se dedicarán exclusivamente para la guarda de artículos sujetos a impuesto, o para la fabricación de dichos artículos cuando se destinen para la exportación.

Así sucedió en este caso. La demandante tenía una destilería y, además, fué autorizada para establecer un almacén general de depósito. La demandante debió, de acuerdo con la regla general, haber pagado allá por el mes de mayo de 1914 el arbitrio sobre los diez y seis mil litros de alcohol que fabricó, antes de sacarlos de su destilería, mas, como los extrajo de ella para llevarlos a su almacén general de depósito, le bastó prestar una fianza para garantizar el pago del impuesto en el caso de que dichos artículos no fueran exportados de la isla, dentro del término de dos años, que fué luego extendido a algunos meses más, mediante prestación de nueva fianza.

El impuesto quedó pesando siempre, garantizado su pago por la fianza, sobre el alcohol, mientras no se dispusiera de él para enviarlo al extranjero, llevándose una contabilidad minuciosa e interviniendo en todos los despachos los agentes de rentas internas.

La última partida se despachó el 13 de junio de 1916, o sea más de dos años después de depositado el alcohol, y entonces se encontró que se había mermado, evaporado o perdido cierta cantidad.

¿Debe la demandante pagar por ella o está exenta de pago?

El legislador (3028, Comp. 1911), ha dispuesto que en caso de que la pérdida fuese causada por fuerza mayor, el alcohol perdido será eximido totalmente de contribución por consecuencia de tal accidente. Y también ha dispuesto que se eximirán del pago del arbitrio los alcoholes destinados para combustibles u otros usos industriales o para el uso de esta-

blecimientos de beneficencia, pudiendo el Tesorero permitir
que se destruya el alcohol que salga de un alambique en es-
tado nocivo para el consumo y eximirlo del pago del impuesto
y pudiendo también rebajar, a su discreción, la cantidad del
impuesto de rentas internas correspondiente a alcoholes que
se perdieren en cualquier tanque de metal bajo el control
del Gobierno, antes de que se pagare dicho impuesto, si resul-
tare de la presentación de pruebas satisfactorias ante él, que
dicha pérdida se debe a causas naturales que el refinador no
ha podido evitar.

*Expressio unius est exclusio alterius.* El caso de la de-
mandante no está incluído en ninguna de las exenciones y
en tal virtud debe considerársele excluído de ellas. Además,
que la demandante sabía que esa era la ley, lo revelan los
términos de la fianza que prestó para garantir el pago del
impuesto.

La cuestión no es nueva. Ha sido resuelta repetidas veces
por los tribunales. En el caso de *Louisville Public Ware-
house Co.* v. *Collector of Customs,* 49 Fed. 561, 569, la Corte
de Circuito de apelaciones del sexto circuito, por medio del
Juez Jackson, se expresó así:

"Las leyes de tarifas de 1883 y 1890 no proveen para alguna con-
cesión por merma o evaporación mientras los espíritus importados
estén en un almacén general de depósito, tal como lo hacía la sección
17 de la ley de mayo 28, 1880 (21 St. at Large, p. 149). Las con-
cesiones para tales pérdidas por merma o evaporación descansan en
las disposiciones expresas de los estatutos, y cuando no están pro-
vistas en ellos, las cortes no pueden hacerlas, no importa la equidad
que hubiere."

Y en el de *Farrell* v. *United States,* 99 U. S. 221, 224, la
Corte Suprema de los Estados Unidos, por medio del Juez
Strong, dijo:

"La fianza estaba fechada en 13 de junio de 1870. Por ella se
obligaban los fiadores al pago de una suma de dinero para garantir
el pago del impuesto de los espíritus depositados en el almacén antes
de ser retirados del mismo, y dentro de un año a contar de la fecha

en que se otorgó. La obligación era incondicional, y era exactamente lo que tanto al destilador como a sus fiadores exigía la ley del Congreso. Ley de 20 de julio de 1868, sección 23; 16 Stat. 135, 136. El depositar los espíritus destilados en el almacén del gobierno no los convertía en propiedad del gobierno, ni hacía al depositario responsable por los riesgos de los mismos. El destilador seguía siendo dueño de los espíritus, y el riesgo por pérdidas por fuego o por cualquier otra causa, era en su consecuencia suyo. El y sus fiadores se comprometieron a pagar al gobierno el impuesto sobre los espíritus que estaban en el almacén dentro de un año, sin excepción alguna por cualquier posible contingencia. La sentencia de la Corte de Circuito era, por tanto, correcta. El caso del destilador puede que sea duro; pero de su mala fortuna no tiene la culpa el gobierno.''

2. Sostiene además la apelante que aun cuando se llegara a la conclusión de que era necesario pagar el impuesto por la merma, para calcular ésta debe prescindirse del agua que se agregó al alcohol, esto es, que en vez de pagar sobre 3,786 litros de alcohol rebajado, sólo está obligado a hacerlo por los 2,078 litros de alcohol puro contenidos en ellos, debiendo devolvérsele en tal caso la suma de $854 que se le cobró ilegal e injustamente.

Ya hemos visto que al fijar el propio legislador (3026, Comp. 1911), la verdadera significación de las palabras espíritus destilados, espíritus alcohólicos, incluyó en la sustancia conocida por alcohol etílico, óxido hidratado de etilo, o espíritu de vino, cualquier dilución de la misma. En tal virtud el alcohol puro al cual se agrega agua, o sea el alcohol diluído, es un espíritu destilado o alcohólico, sujeto como artículo independiente al pago del arbitrio que exige el estatuto.

También hemos visto que el almacén general de depósito no se dedicaba simplemente a la guarda de alcoholes extraídos de la destilería, sí que también a la fabricación de artículos destinados a la exportación.

Transformado el alcohol puro en otro artículo, éste y no el alcohol primitivo constituía la sustancia sobre la cual pesaba el impuesto cuyo cobro estaba suspendido bajo la garantía de la fianza prestada a los efectos de que su dueño

dentro del plazo especificado pudiera exportarlo de la isla. La diferencia entre el alcohol diluído depositado y el exportado, tiene que considerarse como alcohol consumido en la isla y por tanto satisfacerse por ella el impuesto de ley.

Como una demostración de que al agregarse el agua al alcohol la misma parte apelante entendía que se formaba un artículo nuevo, independiente, sujeto al pago del arbitrio, citaremos las declaraciones de Juan Pizá, presidente de la corporación demandante, y Lorenzo Oliver, secretario de la misma, que admiten que el alcohol al cual se agrega agua se convierte al cabo de cierto tiempo, unos dos años, en ron; las palabras expresas de la segunda fianza incluyendo dentro de sus términos el ron depositado en el almacén, y el acto de la propia demandante pagando voluntariamente el impuesto de cincuenta centavos por litro sobre los ciento ochenta y dos litros de ron extraídos de su depósito para muestras.

La intención de la demandante al trasladar el alcohol de su destilería a su depósito, fué la de transformarlo en ron mediante la adición de agua y la acción del tiempo. Para agregarle el agua se requirió la intervención del agente de rentas internas. Ante él se llevó a efecto la operación y el alcohol diluído fué medido y depositado como un artículo independiente para ser exportado dentro de un determinado plazo, debiendo pagarse de otro modo el impuesto exigido por la ley.

Invoca la parte apelante la jurisprudencia que sostiene que "el depósito es solamente para beneficio del destilador y para habilitarlo a dar una fianza por el impuesto en vez de pagarlo en seguida" (22 Cyc. 1637). Estamos conformes con esa jurisprudencia, pero no en que deba aplicarse sólo al momento de la extracción del alcohol puro de la destilería.

En este caso hay dos momentos a considerar: el en que se extrajo el alcohol puro de la destilería y el en que, ya diluído dicho alcohol en el almacén, se depositó en los barriles para ser exportado como ron al cabo de cierto tiempo. El beneficio de la parte apelante estuvo en que por virtud de

poseer su almacén y en consideración a su fianza pudo realizar esta transformación y disponer de más de dos años para vender su alcohol como ron, natural y lógicamente obteniendo mejores resultados.

Por los motivos expuestos, debe confirmarse la sentencia recurrida, sin necesidad de estudiar y resolver los otras cuestiones suscitadas por la parte apelada en su alegato.

*Confirmada la sentencia recurrida.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Hutchison.

El Juez Asociado Sr. Aldrey no intervino en la resolución de este caso.

El Juez Asociado Sr. Wolf disintió.