DWIGHT & LLOYD SINTERING CO., Inc., v. AMERICAN ORE RECLAMATION CO. *

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 105.

1. WEIGHTS AND MEASURES ⬅1—"WEIGHT" DEFINED.
"Weight" is the quantity of heaviness, the quality of being heavy, the degree or extent of downward pressure under the influence of gravity, or the quantity of matter as estimated by the balance or scale.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Weight.]

2. WEIGHTS AND MEASURES ⬅1—STATE LEGISLATION VALID.
The state may, for the protection of the public, legislate as to the weight to be considered in business dealings of certain articles frequently required to be weighed, and such pounds of avoirdupois weight will be binding, unless the parties otherwise agree.

3. WEIGHTS AND MEASURES ⬅3—ENGLISH STANDARDS WERE PART OF COMMON LAW.
The standard weights and measures of England were brought to the colonies and became part of the common law of the land.

4. WEIGHTS AND MEASURES ⬅5—CONTRACT FOR PATENT ROYALTY NOT ONE FOR "WORK TO BE DONE" OR "SALE OR DELIVERY OF PERSONAL PROPERTY."
A contract providing for the payment of a specified price per ton for the right to use certain patents and inventions in sintering ores was not one for work to be done, or for the sale or delivery of personal property, within General Business Law N. Y. § 10, providing that all such contracts shall be governed by the weights and measures specified in that article.

5. WEIGHTS AND MEASURES ⬅5—CONTRACT FOR ROYALTY PER TON GOVERNED BY STATUTORY TON.
A contract to pay a specified royalty per ton for the use of patents and inventions in sintering ores was governed by General Business Law N. Y. § 4, providing that 20 hundredweight are a ton, and not by the long ton of the common law, notwithstanding the further provision of that section that in transactions relating to the sale or delivery of coal 2,000 pounds shall constitute a ton, and section 10, making the weights prescribed applicable to contracts for work to be done, or for the sale or delivery of personal property; these not limiting the general provisions of section 4.

6. STATUTES ⬅206—EVERY PART OF STATUTE SHOULD BE GIVEN MEANING, IF POSSIBLE.
In statutory construction, it is required, if possible, that some meaning be found for every part of the statute, as it is presumed that the Legislature had a meaning as to each provision.

7. STATUTES ⬅206—INTENTION OF WHOLE ACT GOVERNS CONSTRUCTION.
The intention of the whole act controls in the interpretation of its parts.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 252 U. S. —, 40 Sup. Ct. 393, 64 L. Ed. —.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Dwight & Lloyd Sintering Company, Incorporated, against the American Ore Reclamation Company, to recover an unpaid balance of royalties claimed to be due from defendant on a license agreement. Judgment for defendant, and plaintiff brings error. Reversed.

Spencer, Ordway, Lloyd & Wierum, of New York City (Otto C. Wierum, of New York City, of counsel), for plaintiff in error.

Henry B. Gayley, of New York City, for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error's assignor, Dwight & Lloyd Metallurgical Company, entered into a contract in the city and state of New York, as licensor, with the firm of Gayley & Robinson, the assignors of the defendant in error, as licensee. By the terms of this contract, the plaintiff in error was to be paid 3 cents per ton as a royalty. Periodical settlements were to be made on the per ton basis. It was an exclusive license to use the patents in the iron and steel industries in the United States, Canada, Mexico, and Cuba. For the fee of 3 cents per avoirdupois ton for the merchantable product, exclusive rights to the use of the patents were granted to the licensee, and it was to use the process in the actual work of sintering ores, and to manufacture, use, and lease the apparatus covered by the patents, and to grant manufacturing rights to sublicensees. In making payment for such license fees, the defendant in error paid for the long ton only— 2,240 pounds—instead of 2,000 pounds, short ton, as plaintiff in error claims. It seeks to recover, in this action, the difference in amount which it has failed to receive as royalties, amounting to $5,601.96. Therefore the question in dispute between the parties arises over the meaning of the word "ton" as used in the license contract. Does it mean, 2,000 pounds avoirdupois, or 2,240 pounds?

[1] Weight is the quantity of heaviness, the quality of being heavy, or the degree or extent of downward pressure under the influence of gravity, or the quantity of matter as estimated by the balance or scale. Louisville Public Warehouse Co. v. Collector of Customs, 49 Fed. 561, 1 C. C. A. 371. Article 1, § 8, of the United States Constitution, gives to the Congress of the United States power to establish uniform weights and measures. Except as to the standard Troy pound weight, this power has never been exercised. U. S. Rev. Stat. 1878, §§ 3548, 3549 (U. S. Comp. Stat. 1901, pp. 2370, 2371; U. S. Comp. St. 1916 or 1918, §§ 6519, 6520). Many of the states of the Union, however, have exercised this power for themselves and regulate weights and measures.

California—Political Code, §§ 3215, 3222.
Colorado—R. S. 1908, § 7025.
Connecticut—Gen. Stat. 1918, § 4782.
Idaho—Rev. Codes 1908, § 1543.
Illinois—R. S. 1917, c. 147, § 4.
Iowa—Supp. Code 1913, § 3009e.

Kansas—Gen. Stat. 1915, §§ 11715, 11722.
Kentucky—Caroll Ky. St. 1915, § 4820.
Maine—R. S. 1903, c. 44, § 17.
Massachusetts—Rev. Laws, c. 62, p. 583.
Missouri—R. S. 1909, § 11964.
Montana—Rev. Codes 1907, § 2015.
Pennsylvania—Act April 15, 1834 (P. L. 525).
Vermont—Gen. Laws, § 5887.
Washington—Laws 1889-90, p. 268, § 10.
Wisconsin—Stat. 1917, § 1667.

[2] It has been held by the United States Supreme Court that the power to adopt and compel the use of a uniform system of weights and measures is within the police power of the state, and such legislation is not unconstitutional as a deprivation of property, interference with the liberty of contract, or denial of equal protection of the law. House v. Mayes, 219 U. S. 270, 31 Sup. Ct. 234, 55 L. Ed. 213. The state may, for the protection of the public, legislate as to the weight to be considered in business dealings of certain articles frequently required to be weighed, and such pounds of avoirdupois weight will be binding, unless the parties otherwise agree. House v. Mayes, supra.

[3] The standard weights and measures of England were brought to the colonies and became part of the common law of this land. Thompson v. Dist. of Columbia, 21 App. D. C. 402. The English ton was the long ton of 2,240 pounds. In an early decision of the New York state Court of Appeals, it was said that a ton was 2,240 pounds. Roberts v. Opdyke, 40 N. Y. 259. Thus the state early recognized the long ton.

The term used in the contract here considered is avoirdupois ton. The state of New York legislated by general statute, provided for the establishment of standard weights and measures—of all kinds of measurements—and this was provided for in the General Business Law. Consol. Laws, c. 20. Section 2 provided that the standard weights and measures as furnished by the government of the United States "shall be the standards of weights and measures throughout this state." Section 3 provided for the unity or standard measure of length and surface as the standard yard. Section 4 defines the units or standards of weight as the standard Troy and avoirdupois pounds, and prescribes that "the hundredweight consists of one hundred avoirdupois pounds, and twenty hundredweight are a ton." It is provided in—

"Sec. 4. *Units of Weight.*—The units or standards of weight from which all other weights shall be derived and ascertained, shall be the standard weights designated in this article. The hundredweight consists of one hundred avoirdupois pounds, and twenty hundredweight are a ton. In all transactions relating to the sale or delivery of coal, two thousand avoirdupois pounds in weight shall constitute a legal ton."

And in—

"Sec. 10. *Construction of Contracts.*—All contracts made within the state for work to be done, or for the sale or delivery of personal property, by weight or measure, shall be taken and construed according to the standards of weights and measures adopted in this article."

It is contended that, by reason of section 10 of the act, section 4 is not applicable to the contract here in question, because it does not appear that this contract was made for work to be done or for the sale or delivery of personal property by weight or measure. It is contended, and the court below so found, that section 4 is restricted in its application to the sale of coal and that the Legislature did not intend to legislate as to any other subject-matter which might be sold by units of weight. This latter result was reached by applying the rule or maxim, "expressio unius est exclusio alterius." The District Judge ruled that the contract in question was not for work to be done or for the sale or delivery of personal property by a weight or measure. We, too, are of the opinion that the payment of the licensee under the contract was not for work to be done or for the sale or delivery of personal property.

[4] The plaintiff in error's assignor was the owner of certain patents, applications for patents and inventions relating to processes and apparatus for concentrating, agglomerating, reducing, oxidizing, or desulphurizing iron ore, iron concentrates, iron flue dust, blue-billy, and all iron-bearing ores and materials for use in the manufacture of iron and steel. It nowhere appears in the contract that the agreement provided for the sale and delivery of personal property and hence it cannot be classified as one embraced under section 10. Nor does it appear to be a contract for work done. The license contract grants only immunity from suit by the licensor. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122; Chicago Ry. v. Pressed Steel Car Co., 243 Fed. 883, 156 C. C. A. 395.

[5] But the statute in question was intended for the regulation of business generally, as shown by its title—the General Business Law. We think the plaintiff in error rightly contends that the general provisions of the statute should apply, and that the contract should not be accepted in its application by an implication arising from the enumeration in section 10 of the particular transactions to which it does apply. To apply the maxim, "expressio unius est exclusio alterius," would be, in this instant case, a dangerous master to follow in the construction of statutes or documents, as said in Colquhoun v. Brooks, Law Reports, 21 Q. B. Div. 52. The exclusion here, whether it be due to inadvertence or accident, would lead to inconsistency and injustice. It would make the other provisions of the statute inconsistent and absurd. The Legislature did not intend to legislate as to a ton weight for coal and fail to legislate as to the many other commodities that are daily measured by weight.

To guard against this apparent injustice, and make for consistency, the courts have not been hesitant. In Church of Holy Trinity v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, where the question was one of construction of the contract liability forbidding in terms the importation of aliens "to perform labor or services of any kind" in the United States, the question was whether the importation of a clergyman under contract to enter the defendant's service as rector was unlawful. Undoubtedly the act of the defendant was within the letter of the law. It conceded that the specific exception from this law of certain enumerated professional employments—ac-

tors, artists, singers, and others—strengthens the idea that every other kind of labor and service was intended to be reached by the first sec- tion. The court, in reversing the court below, held that the case was not within the intention of the lawmakers, and said:

"It is a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surround- ing its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legisla- tor intended to include the particular act."

Where the court considered the construction of section 3177 of the Revised Statutes (Comp. St. § 5900), relating to the collection of the internal revenue, applied to the collection of specific tax imposed on oleomargine by the Act of August 2, 1886 (Comp. St. §§ 5967, 5977, 6215–6232), the court held that the section, so far as applicable, was made to extend to the special taxes imposed by the section, and said that the marks here referred to were of aid only in describing the leg- islative intent; that it was of deciding importance in some instances and in others not. United States v. Barnes, 222 U. S. 513, 32 Sup. Ct. 117, 56 L. Ed. 291. Where a statute which removed the common- law disability of a wife to sign a policy of insurance upon the life of her husband was construed by the court below as excluding from its provision a policy issued in another state, because of the language, "All policies of insurance heretofore or hereafter issued within the state of New York, shall be assignable," the court held that the literal mean- ing of the words, taking into consideration the policy and general pur- pose of the statute, required the reversal of such interpretation. Spen- cer v. Myers, 73 Hun, 274, 26 N. Y. Supp. 371. The general principle of "expressio unius est exclusio alterius" cannot be questioned, but it applies with a force differing in different cases, and in the case at bar it would be much more reasonable to hold that the Legislature intend- ed to legislate as to all commodities to be weighed rather than merely the weighing of coal. If we should hold that there was such restric- tion by section 10, it would make meaningless section 3, which pro- vides for standards of land measurement. A contract for the sale of land could not be a contract for work to be done, or for the sale and delivery of personal property.

[6, 7] It is required, if possible, in statutory construction, that some meaning be found for every part of the statute, for it is presumed that the Legislature had a meaning as to each provision. There must be reasonable application with a regard to reference of the whole act, and it will not be presumed that the Legislature intended, without any reason, to take away the benefit which it bestows in general terms by a subsequent provision. We think that section 10 was not a statement of its object, but is declaratory of what the law would be if it were not expressed in the act at all. It is not a limitation, and it can only be a limitation by reading into the act some word or phrase which is not

there. We deem it to have been the intention of the Legislature to provide standards for all transactions covering weight, rather than to a limitation such as contended for by the defendant in error. The intention of the whole act will control in the interpretation of its parts. Talbott v. Silver Bow County, 139 U. S. 439, 11 Sup. Ct. 1029, 35 L. Ed. 599; 2 Sutherland on Statutes, § 370.

Under the statute, we think the ton weight is 2,000 pounds, and the judgment is reversed.