CLARA H. SPENCER, Respondent, v. PETER B. MYERS, Appellant, Impleaded with Another.

*Life insurance — assignability of a policy upon the life of a husband for the benefit of his wife — meaning of " issued within the State of New York" — chapter 248 of the Laws of 1879.*

Chapter 248 of the Laws of 1879, which provides that " all policies of insurance heretofore or hereafter issued within the State of New York upon the lives of husbands for the benefit and use of their wives, in pursuance of the laws of the State, shall be from and after the passage of this act assignable by said wife with the written consent of her husband," applies to, and renders assignable by the wife, with the consent of her husband, a policy upon the life of the husband for her benefit, executed outside of the State of New York by a foreign non-resident insurance company, authorized by the laws of this State to do business therein, and sent to its agent in this State for delivery, and delivered here to the assured or the beneficiary, they being residents of this State.

Where a policy on the life of a husband for the benefit and use of his wife is made and delivered in pursuance of the laws of the State of New York legalizing such policies, and is in full effect and operation in this State, it is to be regarded as "issued" therein, within the meaning and intent of the statute.

*Semble,* that the intent and effect of the statute is to make policies upon the life of a husband for the use and benefit of his wife assignable by the wife, with the consent of the husband, in all cases governed by the laws of the State of New York.

APPEAL by the defendant, Peter B. Myers, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Oneida county on the 8th day of December, 1892, on the decision of the court rendered after a trial by the court without a jury at the Oneida Circuit.

*William Kernan,* for the appellant.

*Smith M. Lindsley,* for the respondent.

MARTIN, J. :

This action was to recover $2,000 and interest upon a policy of insurance upon the life of Byron O Spencer, issued by the Connect· icut Mutual Life Insurance Company   The company issuing the policy was incorporated under the laws of the State of Connecticut, and had its office in the city of Hartford in that State   It was

authorized to do business in the State of New York, and had an agent at Utica, who was empowered to take and forward applications for insurance to the home office, and to receive and deliver policies and collect premiums thereon.

The action was originally brought against the insurance company alone  An order was subsequently made, permitting the company to pay into court the amount due upon the policy, and to bring in as defendant Peter B  Myers, who also claimed the money.  The plaintiff was the wife of Byron O. Spencer, and when the policy was issued, both were residents of the city of Utica.  The plaintiff has since been, and is now, a resident of that place.  Her husband continued to reside there until October, 1888, when he became a resident of Springfield, Mass., where he resided until his death in January, 1890.

The application for the policy was taken by the insurance company's agent, who resided at Utica, and was forwarded to the company at Hartford.  The policy was subsequently written at Hartford, sent to its agent at Utica, and by him delivered to Byron O. Spencer, or the plaintiff.  The plaintiff and her husband had one child, who is still living.

In 1887, the plaintiff commenced an action for divorce against her husband, and in October of that year an agreement was made between them by which, in consideration of the conveyance to the plaintiff by her husband of a house and lot in Utica, and certain household furniture, she agreed to accept the same in full payment and satisfaction of her support, and the support, maintenance and education of their child ; and also agreed that she would sign, execute and deliver all necessary releases and assignments of her interest or equities, or that of her child, in or to the policy in question, or the proceeds thereof.

In compliance with this agreement, her husband executed a conveyance of the house and lot, and delivered the same and the household furniture to the plaintiff as he agreed.  At the time there was a mortgage on the house and lot held by the defendant Myers, upon which there was then due over $700.

Pursuant to the agreement between the plaintiff and her husband, she, by an instrument in writing, duly executed and acknowledged, assigned and transferred all her interest in said policy to the defend-

ant Myers, to which assignment her husband consented by an instrument in writing duly executed and acknowledged. At the time of receiving such assignment, and in consideration thereof, the defendant Myers executed a satisfaction of the mortgage on the house and lot, and it was satisfied of record. After the assignment of the policy, Myers advanced to, and paid for, the plaintiff's husband, various sums of money, and rendered services for him which amounted, with interest, to over $2,000, no part of which was ever repaid.

Upon the death of her husband the plaintiff made proofs of loss and delivered them to the company. The defendant Myers also made and delivered to the company proofs of loss. Each claimed the amount due on the policy. The company would pay neither, and the plaintiff commenced this action.

The question in this case was, which of the claimants was entitled to the money. The policy was, by its terms, made payable to the wife if she survived the assured; if not, to his children or their legal representatives. No question arose between the plaintiff or the defendant Myers and the company as to the sufficiency of the proofs, either those furnished by the plaintiff or those furnished by Myers. Nor was there any claim by the insurance company that any of the provisions of its policy had been violated or not complied with. It paid the amount due into court, and the only question litigated was, which of the claimants was entitled to the money.

On the trial the court held that the policy was not issued within this State in pursuance of the laws of the State; that it was not assignable under chapter 248 of the Laws of 1879, and, hence, that the plaintiff's assignment was void, and she was entitled to recover the money in question. Therefore, the only question to be considered upon this appeal is whether the assignment by the plaintiff to Myers was valid. It is doubtless true that anterior to the act of 1840 (Laws 1840, chap. 80), a policy on the life of a husband for the benefit of his wife and children was unauthorized. But that act provided for and legalized the issuing of such policies. After its passage the courts of this State imposed upon the title of the wife to policies issued in pursuance of it, certain limitations, which were that she could not dispose of such policy, and that her creditors could not reach it. These decisions were based upon the idea that it was the intent of the Legislature when it passed that act to make

provisions for a state of widowhood and for orphan children, and that to hold that the wife might transfer the policy would be in violation of the spirit of the law. After the passage of that act, and after the courts had firmly established the doctrine that policies issued under it could not be assigned by the wife, the Legislature, by chapter 821 of the Laws of 1873, provided that a married woman might surrender her policy issued under the act of 1840, and when she had no children might dispose of it either by will or deed, and that the person to whom it should be granted or conveyed should be invested with the same rights as she would have had in case she survived the person on whose life the policy was issued. Although under that statute a married woman could assign such a policy only when she had no children, yet its enactment shows a clear intent upon the part of the Legislature to change the rule established by the courts as to the non-assignability of such policies.

Subsequently, the act of 1879 (Laws 1879, chap. 248) was passed. The title to the act is: " An act for the relief of policyholders in life insurance companies." Its provisions are: " All policies of insurance heretofore or hereafter issued within the State of New York upon the lives of husbands for the benefit and use of their wives, in pursuance of the laws of the State, shall be, from and after the passage of this act, assignable by said wife, with the written consent of her husband; or in case of her death by her legal representatives, with the written consent of her husband, to any person whomsoever, or be surrendered to the company issuing such policy, with the written consent of the husband." That the effect of this statute was to confer upon the wife authority to assign such a policy, with the consent of her husband, even though she had children, was distinctly held in *Anderson* v. *Goldsmidt* (103 N. Y. 617).

As we have already seen, the construction placed upon this statute by the court below was that it applied only to policies of insurance that were actually made and delivered within this State, but that it did not apply to a policy made outside of the State and sent to its agent to be delivered to a beneficiary, who, with her husband, were residents, although the insurance company issuing it was authorized by the law of the State to do business therein.

In determining the construction to be placed upon this act, it is proper at the outset to inquire as to the purpose and intent which

governed the Legislature in passing it. In the interpretation of statutes the great principle which is to control is the intention of the Legislature. This is to be ascertained from the cause or necessity of making the statute, as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the lawmakers it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which are to be regarded in its interpretation, and if these find fair expression in the statute it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some of its provisions. A reasonable construction should be adopted in all cases where there is doubt or uncertainty in regard to the intention of the lawmakers. (*People ex rel. Wood* v. *Lacombe*, 99 N. Y. 43.) In this State the title of a statute may be resorted to for aid in discovering the design of the Legislature, and to limit the meaning of general words. (*Brick* v. *Gannar*, 36 Hun, 52; *People ex rel. Cooke* v. *Wood*, 71 N. Y. 371; *People ex rel. West. F. I. Co.* v. *Davenport*, 91 id. 574; *People ex rel. Commonwealth Ins. Co.* v. *Coleman*, 121 id. 542.) A court may inquire into the intent of the Legislature with the view of restricting the effect of the general language of an act which in itself is plain and unambiguous, although the power is to be carefully exercised, and the court may, for that purpose, consider the title of the act. (*People ex rel. West. F. I. Co.* v. *Davenport*, 91 N. Y. 574; *Trustees of Exempt Firemen's Fund* v. *Roome*, 93 id. 313.) The exact and literal wording of an act may be rejected, if, upon a survey of the whole act and the purpose to be accomplished or the wrong to be remedied, it is plain that such exact or literal rendering of the words would not carry out the legislative intent. (*Bell* v. *Mayor, etc., of N. Y.*, 105 N. Y. 139.)

If we adopt the foregoing rules and consider the title of this act, the cause, necessity and object of its passage, and the other circumstances relating to it, we apprehend there will be but little difficulty in determining the true intent and purpose of the Legislature. The purpose of this statute was declared in its title to be " for the relief of policyholders in life insurance companies." It contains nothing which indicates that its purpose was to create a distinction between

policies written within the State and those written outside of its limits, or to create a distinction between the policies of resident and non-resident insurance companies, or in any way to give preference to the policies of the one over those of the other.

Again, when we consider the history of the statutes upon this subject, and the decisions made under them, we find that although the Legislature authorized the issuing of such policies, and in no way forbade their transfer, yet the courts held that they were not assignable. To change the rule thus established, the Legislature, by the statute of 1873, abolished it in part. It is quite manifest, we think, that the purpose of the statute of 1879 was to further abolish the rule so as to make such policies assignable, with the consent of the husband in all cases, governed by the laws of this State.

Can it be fairly supposed that it was the purpose and intent of the Legislature, by the passage of this act, to provide two rules in relation to the assignability of such policies; one, that a policy issued by a company authorized by law to do business in the State, and even a resident thereof, is non-assignable where the physical act of writing and sending it is performed out of the State; and the other, that where the physical act of executing it was performed within the State it may be assigned, although made by a non-resident insurer. We think not. It may be, although we do not decide the question, that a policy, where it is signed and sent by mail to an agent to be delivered, can technically be said to have been issued at the place where it was signed and from which it was sent. But if it be true, would any fair construction of this statute justify us in holding that the Legislature intended to use the word "issued" in that strict and technical sense. It seems to us not. We think the word "issued" was used in a broader and different sense, and that where a policy on the life of a husband for the benefit and use of his wife, is made and delivered in pursuance of the laws of the State legalizing such policies, and it is in full effect and operation in this State, it is to be regarded as issued therein within the meaning and intent of that statute. A contrary construction would lead to absurd results. If this statute were to be construed as applicable only to policies which were executed and delivered within the borders of the State, it would follow that whenever a policy was made and delivered outside its borders it would be non-assignable, even though the insurer,

assured and beneficiary were all residents of the State. And it would also follow that no such assignment could be safely taken unless accompanied by conclusive evidence that the policy was actually made, executed and delivered within the borders of the State. We cannot think the Legislature intended to pass a statute which would be followed by any such absurd and inconvenient results. Moreover, so far as we find any authority bearing upon the question, it seems to be in accord with the conclusion we have reached.

In *Brick* v. *Campbell* (122 N. Y. 337, 345), POTTER, J., in referring to the question, said: "We are not referred by the respondent to any, nor am I aware of any, case where it is held or intimated that it makes any difference as to the assignability of insurance contracts, whether the policy was issued by a corporation created under the laws of this State. The several acts of the State in relation to policies issued for the benefit of a wife, or wife and children, make no such distinction, and I can see none in principle, but quite the contrary." In *Connecticut Mutual Life Insurance Company* v. *Van Campen* (32 N. Y. St. Repr. 1125) it was held that an assignment by the husband and a ratification by his wife were valid where the policy was issued by the company that issued the policy in this case. The policy in *Wilson* v. *Lawrence* (13 Hun, 238) was also one issued by the Connecticut Mutual Life Insurance Company.

Thus far we have treated the contract between the parties as one governed by the laws of this State. If, however, it is to be regarded as a contract under the laws of the State of Connecticut, it would seem that under the laws of that State the assignment of the policy was valid. (*Connecticut Mutual Life Insurance Company* v. *Westervelt,* 52 Conn. 586.)

We think the court below erred in holding that the assignment by the plaintiff was void, and that the judgment should be reversed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.