### 504.  WELLMAKER *v.* TERRELL, Governor.

1. The judge of the city court of Barnesville is not disqualified from presiding, or from entering a judgment upon a scire facias to forfeit a criminal recognizance, although he is ex-officio clerk of said court and individually pecuniarily interested in the costs in that case, and perhaps in the collection of other costs which may be due to him in other cases, even though the collectibility of such latter costs may be, to some extent, dependent upon a judgment forfeiting the recognizance.

(a) That construction of a statute is to be preferred which will give effect to the legislative intent and preserve the act, rather than that construction which will necessarily destroy it.

(b) Costs are the fees allowed officers of courts for their services in a judicial proceeding. Though incidental to a suit, they are independent of the issue. There is no liability upon a party for costs until judgment fixing that liability; and pecuniary interest in costs, the amount of which is fixed by law, is not synonymous with pecuniary interest in a case.

2. Judgment absolute can not be entered against the bail on a criminal recognizance, or appearance bond, until it appears from the record that he has had an opportunity of producing the body of his principal, or of showing cause why his principal does not appear.

3. The statement in a bond, that the principal is bound to appear "to answer the charge of larceny from the person," sufficiently states the offense against the laws of the State, with which the defendant principal is charged, and which he is required to answer.

Certiorari, from Pike superior court—Judge Reagan. April 5, 1907.

Argued October 16, 1907.—Decided February 28, 1908.

A. A. Murphey, for plaintiff in error. O. H. B. Bloodworth, solicitor-general, E. A. Stephens, Rosser & Brandon, contra.

RUSSELL, J. The plaintiff in error was surety on the appearance bond of Amos Hardaway, who was accused, in the city court of Barnesville, of the offense of larceny from the person. The bond was forfeited, and judgment absolute entered against the plaintiff in error, Wellmaker, surety. The points raised by the bill of exceptions and the record are, whether the bond is a valid, binding obligation or is fatally defective; whether the recognizance was properly forfeited, even if the judge of the court was not disqualified; and whether, as a matter of fact and of law, the judge of the city court of Barnesville is not disqualified, by reason of his financial interest in the result, from entering a judgment absolute on a criminal recognizance in that court.

We shall consider these questions in reverse order. The Civil Code, §4045, so far as is now material, declares that "No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission, can sit in any cause or proceeding in which he is pecuniarily interested, without the consent of all the parties in interest," etc. From the provisions of the act creating the city court of Barnesville (Acts of 1899, p. 332) it is apparent that the judge of that court, in his capacity as clerk, receives his compensation from the fees fixed for his services in that court as clerk thereof. It must be conceded that the judge, acting as clerk, is pecuniarily interested in the costs; and but for a prevailing public policy, which has long existed and been recognized in this State, which we may say is almost coeval with the history of the State itself, we should hold, in accordance with our personal views, that the interest of the

judge of the city court of Barnesville in the costs is such pecu-
niary interest in the cause as would and should disqualify him from
presiding therein.   Every judge should be in a position, not only
to appear, but really *to be* impartial.   The writer confesses that he
is unable to see the difference, except as to amount, between the
pecuniary interest in a part of the subject-matter of a case and
the whole of it, unless it be that the costs can be separated from
the case itself in the consideration of this question.   And this
separation and the distinction based upon it is, after all, purely
arbitrary, and of doubtful propriety.   By the scheme of the act
establishing the city court of Barnesville, the judge's pay depends
entirely, in criminal cases and cases of bond forfeitures, on con-
viction and judgment absolute.   It is apparent that if there are
no convictions there will be no fines or convict hire; if no fines or
convict hire, no pay for the judge for criminal cases, unless the
bond be forfeited; and if no bond be forfeited and judgment of
forfeiture collected, still no means for the payment of the judge.
The 9th section of the act (Acts 1899, p. 334) says: "The judge
of said court shall be ex-officio clerk thereof," and though he may
appoint a clerk, section 14 provides that "Fees and costs shall
go to and belong to the judge of said court as a part of his com-
pensation as such judge, and not to the clerk;" and the same pro-
vision appears in section 17.   Section 44, after authorizing the
judge of said court to hire out the convicts of said court, or, in
default of hiring, to otherwise dispose of them as provided in the
act, empowers the judge to distribute the money arising from such
hire as part of the fund subject to the payment of insolvent lists
for costs, including his own.   Section 45 provides: "That at or
within ten days after each regular term of said city court, and
oftener if he shall deem proper to do so, the judge of said city
court shall distribute the fines and forfeitures and convict hire
arising from cases tried in said court, as follows:   Fines, forfei-
tures, and convict hire, arising in cases which originate in said
city court, shall be prorated betwen the solicitor, judge, and sheriff
of the city court, and the justices of the peace and notaries pub-
lic and ex-officio justices of the peace and constables on their bills
for insolvent costs; fines, forfeitures, and convict hire, arising
from cases transferred from the superior court to the city court,
shall be prorated between the solicitor, judge, and sheriff of the

city court, the solicitor-general and clerk and sheriff of the superior court, and justices of the peace and constables, on their bills for insolvent cost in transferred cases, the judge of the city court in each instance participating on the basis of the fees and costs usually going to the clerk for his services in such matters, as the judge under this act, as part of his compensation, is to receive all the clerk's fees in said court, and is to employ a clerk, if he desires, out of his own pocket. If at any time there shall be a surplus of the insolvent funds arising from cases originating in the city court after paying all insolvent costs on cases originating in city court, the same shall be applied to insolvent costs in transferred cases; and if at any time there shall be a surplus of insolvent funds arising in transferred cases after paying all insolvent costs in transferred cases, the same shall be applied to insolvent costs in cases originating in the city court. If at the end of any year there shall be any surplus after paying the insolvent costs, the same shall go to assist paying juries fees and incidentals of said court; the clerk of said court shall keep two lists, one of the criminal cases transferred from the superior court, and the other of criminal cases originating in said city court, which lists shall show the names of the defendants, the disposition of the cases, the amount of cost to which each officer is entitled, the amount of fine and the amount of same paid to each officer, and at the same time or times above stated, he shall make a report to the judge; and if the lists are found correct, the judge shall approve said lists; if incorrect, he shall correct and approve them. When said lists have been approved they shall be recorded on the minutes of said court. The judge shall, before paying bills for insolvent cost, approve the same and order them placed on the minutes of said court; and they shall be a lien on the insolvent funds superior to all other liens; and the clerk of said court shall also keep a book in which he shall open an account with each officer entitled to share in said insolvent funds, giving him credit for all bills of insolvent costs approved by the judge as aforesaid, and debiting him with all payments. All orders distributing such money shall be entered on the minutes of said court, and until distributed the funds are considered in the hands of the court, and the judge shall be the proper custodian thereof and shall disburse the same by order as aforesaid."

In one sense, the judge of the city court of Barnesville is pe-
cuniarily interested in every cause tried in his court, and the code
forbids any judge from presiding in a cause in which he is pe-
cuniarily interested. The purpose of the legislature in the passage-
of the act of 1899 was to create a court, and of necessity to pro-
vide a judge. If pecuniary interest *in a cause* is extended to mean
pecuniary interest *in the costs,* this construction would destroy the
act, because there can be no judge, and of course, without a judge,
no court. Under a well-settled and controlling rule of construc-
tion, it is the duty of the court, if possible, so to construe an act
as to preserve it, and to give effect to the intent and purpose of
the lawmaking power, rather than to destroy the act and frustrate
the manifest purpose of the legislature. As it is plainly appar-
ent that the judge provided for by the act would never be qualified
to preside in the court thereby created, it is clearly inferable that
the lawmakers did not consider pecuniary interest in the costs
to be the pecuniary interest in a cause referred to in the Civil
Code, §4045. While we can not say that we personally approve
of the scheme of this act, so far as relates to the payment of the
judge, still we are constrained, by the well-settled rule to which
we have referred, to uphold its legality.

Construing the words "pecuniarily interested," as used in the
code section, strictly with reference to the context, they plainly
refer to the words "cause or proceeding." That is, if the judge
has any interest in the original subject-matter of the cause of ac-
tion, he will be disqualified upon the same ground as if he were
*related* by blood or marriage to one of the parties within the prohib-
ited degree. That is disqualification *in the cause.* The cost,.
however, is only an attendant of the suit. It is, in one sense, an
inseparable attendant of both parties until the cause is ended, but
it hovers over both parties and does not attach itself to either un-
til it is affixed upon the one or the other by the judgment of the
court, and thus becomes permanently domiciled. The first act fix-
ing compensation of officers by fees or costs, which we have been
able to discover, was the act of 1792, and this act (in connection
with the fees provided for quite a number of officers) made pro-
vision for the payment of clerks of courts in this manner. It is as
clerk that the judge of the city court of Barnesville is empowered
to collect costs, and thereby has a pecuniary interest in the accumu-

lation of costs and their collection. But if the cost be treated as an independent element, separate from the case itself, and which only attaches liability to one or other of the parties as an incident dependent upon the result of the trial, then the judge can not be said to be pecuniarily interested in the cause so as to disqualify him from presiding. The pecuniary interest referred to in the code is an interest in one side or the other of the case,— a loss in the subject-matter, or a gain dependent upon the result of the issue. The cost is not a part of the subject-matter, and the amount of the cost, being fixed by a law, is independent of the issue. There was, at common law, no cost of suit allowed as such; and thus the fact that the cost is a matter separate from the suit must be recognized. At common law no costs were allowed eo nomine; and though in actions where the plaintiff recovered damages the jury were allowed to include *his expenses*, a defendant had no indemnity for his expenses in case he prevailed.

The fact that costs are of statutory and not of common law origin is quite important in the decision of the question before us. "The term 'costs,' as applied to proceedings in a court of justice, has, in the acceptation of the profession, and by the practice of all courts in Georgia, a well-understood meaning. It includes all charges fixed by statute as compensation for services rendered by officers of the court in the progress of the cause." *Davis* v. *State*, 33 *Ga.* 531-533; *Markham* v. *Ross*, 73 *Ga.* 105. If collectible, the costs are payable to the officer, no matter which party prevails. The history of section 4045 of the Civil Code confirms the view that the pecuniary interest in a cause or proceeding referred to does not include an interest in the costs. The germ of the code section was the fourth section of the act approved December 5, 1801 (found on page 460 of Cobb's Digest), which provided that "In all cases brought in the said superior courts, or either of them, where either of the judges thereof shall be a party or interested therein, it shall be the duty of three or more of the justices of the inferior court to preside at the trial of the same." Next the act of 1868 was passed (Acts 1868, p. 129); it gave the clerk of the superior court the right to select a member of the bar to preside where the judge of the superior court was disqualified and where opposing counsel could not agree upon a member of the bar who was present. Thus the act stood in the

Code of 1873. In 1880 (Acts 1880-81, p. 68), the legislature passed an act enlarging the grounds of disqualification, by providing that the judge should not preside in a case in which he had presided in any inferior judicature, when his ruling or decision was the subject of review, without the consent of all the parties. It is evident from the original act of 1801, as well as the subsequent acts passed upon the subject of judicial disqualification upon the ground of interest, that the code section is aimed at interest in the subject-matter of the cause, and not the incident of a suit which is provided merely as a means of paying the officers of courts for their services,—the costs. The interest, which was intended should operate in disqualification, was a feeling that would prompt the judge to desire that one party, rather than the other, should prevail,—not on account of self-interest, unless the trial judge is himself a party, but on account of interest in a party and *his* rights as such party. Thus, all the disqualifications created since the act of 1801 concerned circumstances and conditions in which it is probable that the judge himself would have no pecuniary interest. He might have none even though the litigant were related to him within the fourth degree; if his fee had been paid in full, he would have no pecuniary interest, although his former client was a party; and the fact that he had previously passed upon some point in a case in a lower judicature of course is of no pecuniary interest to him. When we consider these changes in the original act, as explanatory of the original intention of the legislature in the passage of the act of 1801, as well as of its subsequent intention in the changes made, it may be assumed that the legislature did not presume that the fact that a decision in favor or against one of the litigants rather than the other,—which might render costs, otherwise uncollectible, in fact collectible,—would influence the conscience and judgment of the judge. We are well aware that the ancient doctrine, that favor is not to be presumed against a judge, has been overruled by practical modern legislation, and that it can be replied that a judge should be absolutely free from bias of any kind. It can also be insisted that even judges are not exempt from the frailties of human nature, and that sound public policy requires that a judge should not be placed in the position where his judgment is likely to be influenced by the consideration that one judgment may result in the collection of his

costs, whereas the contrary judgment would defeat its collection. We agree with the learned counsel for plaintiff in error that good policy should prohibit the payment of a judge by fees, and the creation of a contingency by which (in some cases at least) the collection of the judge's costs or money for his benefit may be rendered certainly collectible, and in the other collection be rendered doubtful. This is the most that can be said as to the payment by fees in this case.

But while we agree with counsel that the act creating the city court of Barnesville is not in accord with our view of what should be the policy of the State with reference to the payment of judicial officers by fees, still we can not hold that the provision in the act upon this subject is contrary to the public policy of this State, or unconstitutional. On the contrary, it has been the policy of this State from the earliest times to pay numerous judicial officers by assigning to them the fees usually denominated costs, in lieu of any fixed salary. Besides justices of the peace, all ordinaries are paid by fees, and the same contingency as to the collection of their costs may arise as in the present case. Justices of the inferior courts received fees for their services, in lieu of a salary. Judges of the county courts, except where otherwise recommended by the grand jury, were thus paid, and quite a number of the acts creating city courts, especially those whose territorial jurisdiction was limited to a subdivision of a county, have provisions practically identical with those in the act now under consideration. So that, so far from the provisions of the act creating the city court of Barnesville being contrary to the public policy of the State, it may rather be asserted to be in accord with its settled policy in the establishment of inferior judicatures. This policy is based upon reasons of public economy; and while this policy may not meet our approval, it can not be overlooked or disregarded. As we can not conclude that the General Assembly of 1899 intended not to create the court, which it solemnly declared it was creating, as well as on account of the other reasons to which we have referred, we are constrained to hold that the judge of the city court was not disqualified to preside in the case now before us.

2. The plaintiff in error demurred to the forfeiture, upon the ground that there was no record in this case as provided by law.

The contention is that it did not appear upon the record that the defendant and his surety were called, and did not appear when the judgment nisi was signed and the rule nisi issued and scire facias was ordered to issue.  It was within the power of the judge of the city court of Barnesville, if judgment nisi was in fact rendered, to make the minutes of the court speak the truth by an entry of the judgment nunc pro tunc; but this, so far as the record discloses, was not done.  The paper presented to the judge was no part of the record until it was entered upon the minutes.  The uniform practice, as. to the forfeiture of the bond in criminal cases in this State, so far as we are apprised, is to embody in the judgment nisi, which directs the issuance of scire facias, the statement that the principal was called and failed to appear and the surety was called and failed to produce the body of his principal. The judgment nisi, when signed by the judge and entered upon the minutes, constitutes record of the fact that the principal was called and did not appear; and if this fact was entered upon the minutes, even though the judgment nisi were in fact never signed by the judge, and yet the minutes are signed by him, the record is complete and valid.  The point is ruled in *Park* v. *State, 4 Ga.* 399, and it is held, that, "Before bail in a criminal case can be made liable, the record must show that the principal was called and did not appear."  It does not appear that the paper offered by State's counsel as a record was ever filed in the court.  It may be that it was, and that the clerk of the court knew that it was, but it can not be implied that the judge knew it to be of file, in the absence of an entry either on the minutes or the paper itself.  In the absence of an order correcting the record, the judge erred in entering the judgment absolute against the surety; and the certiorari should have been sustained upon this ground by the judge of the superior court.

3.  It is insisted by plaintiff in error that the recognizance upon which he was surety is fatally defective, because it does not allege an offense committed against the laws of Georgia, and because the bond does not clearly set forth the court to which the principal is to appear.  The bond says, "the city court of Barnesville." Plaintiff in error insists that the bond should have required the defendant to appear at "the city court of Barnesville, Pike County, Georgia."  Neither of these points is meritorious.  It is true that

it was held in *Nicholson* v. *State*, 2 *Ga.* 363, that a recognizance must be its own interpreter and must specify on its face the crime of which the accused stands charged and for which he was arrested. It must also show that the charge is of an offense committed against the laws of Georgia.  As shown in *Mason* v. *Terrell, 3 Ga. App.* 348 (60 S. E. 4), it has been decided in this State that the use of the word "misdemeanor" in a bond is sufficient compliance with the principles announced in the *Nicholson* case.  It can be presumed that the principal on the bond, in common with every citizen of the commonwealth, knew that larceny from the person is an offense committed against the laws of Georgia, and to make this additional statement would have been useless repetition.  The court before which the defendant principal was bound to appear was correctly set forth.  The caption of the act is "An act to establish the city court of Barnesville, in the city of Barnesville, Pike county," etc.  The first section of the act establishes the city court of Barnesville eo nomine.  The only reference to Pike county in Georgia is in the statement that the city court of Barnesville, as established by the act, is to be held in the city of Barnesville in Pike county, Georgia.

For the sole reason stated in the second division of this opinion, we find error in the judgment of the judge of the superior court in dismissing the certiorari; and the judgment is          *Reversed.*