## MATHIS *v.* FULTON INDUSTRIAL CORPORATION.

No. 6899. APRIL 11, 1929. REHEARING DENIED JULY 18, 1929.

*R. R. Jackson* and *C. E. Moore,* for plaintiff in error.

*Tillou Von Nunes, Irma Von Nunes,* and *Bernard E. Baker,* contra.

RUSSELL, C. J. The Court of Appeals desires instructions from this court upon the following question: "Is the superintendent of banks, who is appointed and holds office under the act of the General Assembly approved August 16, 1919 (Ga. L. 1919, p. 135 et seq.), authorized to issue the license referred to in section 1 of the act approved August 17, 1920 (Ga. L. 1920, p. 215 et seq.) ?" To state the question differently, is the superintendent of banks authorized to issue the license required of lenders under the provisions of the small-loan act, although the licensing official is referred to in the latter act (Ga. L. 1920, p. 215) as the State bank examiner? We are of the opinion that the question should be answered in the affirmative. Prior to the passage of the act

approved August 16, 1919 (Ga. L. 1919, p. 135 et seq.), there was no banking department in this State. The act of 1907 (Ga. L. 1907, p. 85) merely placed upon the State treasurer, as a specially designated person, the duty of supervising the conduct of the business of banking in this State. As such selected individual · he was named bank examiner. The legislature might as well have designated any other person or official as to have selected the State treasurer, except for the fact that the regulation of the banking business was made a department or bureau within the treasury. In 1919 the duty of examining banks and of being bank examiner was taken from the State treasurer, and the department of banking ceased to be under the supervision of the State treasurer. A department of banking was established as a distinct executive department, and the regulation of banks, including all duties incident · to the supervision of the banking business, was placed in charge of the superintendent of banks. In passing the act of 1920 the General Assembly seems to have overlooked the passage of the act of 1919 and the creation of the office of superintendent of banks; and so in section 1 of the act of 1920 it is provided that the license for which $100 is required should be issued by the State bank examiner. But at that time there was no such office as that formerly held by the State treasurer. Evidently it was not the intention of the General Assembly to require the license to be issued by the State treasurer as it was before the passage of the act of 1919. Clearly the legislative intention was that the person who took the place of the former bank examiner, to wit, the superintendent of banks, should be the licensing official. To hold otherwise would be to render ineffectual and abortive the object intended by the passage of the act of 1920.

Section 2279 of the Code of 1910 provides: "There shall be in the department of the treasury of this State a Bank Bureau," and section 2280 declares that "the treasurer of the State shall be the State bank examiner." The bank bureau was established "in the department of the treasury," and the duty of the "State bank examiner" was put on the "treasurer of the State." Consequently, when the General Assembly enacted the banking law of 1919, the provisions of sections 2262-2366 of the Civil Code of 1910 were repealed and superseded by the provisions of the act of 1919, which governs all matters pertaining to banks and banking in this State.

Section 1 of the act of 1919 created "a banking department of the State of Georgia, to be designated as the department of banking, charged with the execution of all laws heretofore passed or which may hereafter be passed relating to banks as herein defined." By the provisions of section 2 the chief officer of the department of banking shall be known as the superintendent of banks. Unlike the treasurer designated as the State bank examiner by the act of 1907, supra, the superintendent of banks is to be appointed by the Governor by and with the advice and consent of the Senate, to hold his office for a fixed term of four years. As already stated, the provisions of the banking act of 1919 were overlooked in the passage of section 1 of the act of 1920, supra, known as the small-loan act; and hence provision was attempted to be made for the issuance of the license by the State bank examiner, whose office had been abolished by the passage of the act of 1919. On August 17, 1920, the treasurer of the State was no longer State bank examiner. His power to act had been taken away from him; and as there was no such officer de jure, there could be no such officer de facto. *Bedingfield* v. *First National Bank,* 4 *Ga. App.* 197 (61 S. E. 30).

In such circumstances as those to which we have just adverted it is well settled that that construction of a statute is to be preferred which will give effect to the legislative intent and preserve the act, rather than that a construction be adopted which will necessarily destroy it. The intention of the legislature was to make an effective small-loan act; and in construing statutes the intention of the General Assembly, when ascertained, must govern, and the mere letter of the statute yield to the spirit. *Wellmaker* v. *Terrell,* 3 *Ga. App.* 791 (60 S. E. 464) ; *Roberts* v. *State,* 4 *Ga. App.* 207 (60 S. E. 1082). And so in *Lee* v. *Tucker,* 130 *Ga.* 43 (60 S. E. 164), where the act under consideration provided that the county-site should be removed to the Town of Ocilla, and there was in fact no town of that name in this State though there was a City of Ocilla, this court held that the City of Ocilla was meant, ruling, in the language of Black on Interpretation of Laws, "A misdescription or misnomer in a statute will not vitiate the enactment or render it inoperative, provided the means of identifying the person or thing intended, apart from the erroneous description, are clear, certain, and convincing." As we have shown, it was the intention

of the General Assembly, in the passage of the act of 1920, to create as the licensing official whomever was the head of the banking department; and since the head of the bank bureau had been transformed into the superintendent of banks, the powers theretofore exercised by the State bank examiner were naturally transferred to the superintendent of banks as created by the act of 1919. Upon this principle the Supreme Court of the United States, in *United States v. Farenholt,* 206 U. S. 226 (27 Sup. Ct. 629, 51 L. ed. 1036), held that it would not adhere to the written words of the statute involved. Mr. Justice McKenna, delivering the opinion of the court, said: "A court is not always confined to the written word. Construction sometimes is to be exercised as well as interpretation. And 'construction is the drawing of conclusions respecting subjects that lie beyond the direct expression of the text from elements known from and given in the text—conclusions which are in the spirit, though not within the letter, of the text.' Lieber, 56."

It would seem that an affirmative answer to the question of the Court of Appeals would be authorized by the contemporaneous and continued construction of the act of 1920 by the department of banking for the past eight years; for the contemporaneous and continued construction of an act by officers of the government is entitled to be given weight in cases of doubt as to the proper construction of legislative enactments. *Epping v. Columbus,* 117 *Ga.* 263 (7) (43 S. E. 803); *Carroll v. Wright,* 131 *Ga.* 728, 736 (63 S. E. 260). In *Temple Baptist Church v. Georgia Terminal Co.,* 128 *Ga.* 669, 680 (58 S. E. 157), Mr. Justice Cobb said: "This court, and all other courts, will recognize the practice of co-ordinate departments of government, and allow the construction placed by the officers in such departments upon statutes, and even the constitution, to be operative where there is room for construction." See also *DeLoach v. Newton,* 134 *Ga.* 739, 757 (68 S. E. 708, 20 Ann. Cas. 342). It is apparent that the legislature in the passage of the act of August 17, 1920, intended to put supervision of the small-money lenders provided by that act, and allowed, under certain conditions, to charge a rate of 3-1/2 per cent. interest per month, under the State banking department. The superintendent of banks, being the head of the banking department, is authorized to issue the licenses provided in the act.

*All the Justices concur.*